[973 NE2d 743, 950 NYS2d 333]

GEORGIA MALONE & COMPANY, INC., Appellant, v RALPH RIEDER et al., Defendants, and ROSEWOOD REALTY GROUP, INC., et al., Respondents.

Argued May 31, 2012; decided June 28, 2012

**POINTS OF COUNSEL**

*Adam Leitman Bailey, P.C.*, New York City (*Jeffrey R. Metz* and *Courtney Killelea* of counsel), for appellant. I. Georgia Malone & Company, Inc.'s complaint states a viable cause of action for unjust enrichment against Aaron Jungreis and Rosewood Realty Group, Inc. (*IDT Corp. v Morgan Stanley Dean Witter & Co.*, 12 NY3d 132; *Goldman v Metropolitan Life Ins. Co.*, 5 NY3d 561; *Miller v Schloss*, 218 NY 400; *Byxbie v Wood*, 24 NY 607; *Blue Cross of Cent. N.Y. v Wheeler*, 93 AD2d 995; *Paramount Film Distrib. Corp. v State of New York*, 30 NY2d 415; *Aetna Cas. & Sur. Co. v LFO Constr. Corp.*, 207 AD2d 274; *Carriafielio-Diehl & Assoc., Inc. v D&M Elec. Contr., Inc.*, 12 AD3d 478; *Wolf v National Council of Young Israel*, 264 AD2d 416; *Cohn v Rothman-Goodman Mgt. Corp.*, 155 AD2d 579.) II. The dissent properly interpreted this Court's decision in *Mandarin Trading Ltd. v Wildenstein* (16 NY3d 173 [2011]). (*Sperry v Crompton Corp.*, 8 NY3d 204; *Kagan v K-Tel Entertainment*, 172 AD2d 375.)

*Westerman Ball Ederer Miller & Sharfstein, LLP*, Uniondale (*Jeffrey A. Miller* of counsel), for respondents. I. Appellant's unjust enrichment claim was properly dismissed because appellant could not state the elements of the claim. (*Mandarin*

*Trading Ltd. v Wildenstein*, 16 NY3d 173; *Sperry v Crompton Corp.*, 8 NY3d 204; *Kagan v K-Tel Entertainment*, 172 AD2d 375; *Ehrlich v Froehlich*, 72 AD3d 1010; *Seneca Pipe & Paving Co., Inc. v South Seneca Cent. School Dist.*, 63 AD3d 1556; *M & B Joint Venture, Inc. v Laurus Master Fund, Ltd.*, 49 AD3d 258; *Clark v Daby*, 300 AD2d 732; *Monex Fin. Servs., Ltd. v Dynamic Currency Conversion, Inc.*, 62 AD3d 675; *Maywalt v Parker & Parsley Petroleum Co.*, 808 F Supp 1037; *Reading Intl., Inc. v Oaktree Capital Mgt. LLC*, 317 F Supp 2d 301.) II. In the alternative, appellant's unjust enrichment claim was properly dismissed because a valid and binding contract governed the subject transaction. (*American Sugar Ref. Co. of N.Y. v Waterfront Commn. of N.Y. Harbor*, 55 NY2d 11, *appeal dismissed sub nom. New York Shipping Assn., Inc. v Waterfront Commn. of N.Y. Harbor*, 458 US 1101; *Matter of Rivera v Smith*, 63 NY2d 501; *Telaro v Telaro*, 25 NY2d 433; *Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382; *Seneca Pipe & Paving Co., Inc. v South Seneca Cent. School Dist.*, 63 AD3d 1556; *Feigen v Advance Capital Mgt. Corp.*, 150 AD2d 281; *Julien J. Studley, Inc. v New York News*, 70 NY2d 628.) III. The cases appellant cites in its brief either undermine appellant's position or have no application to this case. (*IDT Corp. v Morgan Stanley Dean Witter & Co.*, 12 NY3d 132; *Goldman v Metropolitan Life Ins. Co.*, 5 NY3d 561; *Miller v Schloss*, 218 NY 400; *Paramount Film Distrib. Corp. v State of New York*, 30 NY2d 415; *Bradkin v Leverton*, 26 NY2d 192; *Carriafielio-Diehl & Assoc., Inc. v D&M Elec. Contr., Inc.*, 12 AD3d 478; *Wolf v National Council of Young Israel*, 264 AD2d 416; *Ehrlich v Froehlich*, 72 AD3d 1010; *Aetna Cas. & Sur. Co. v LFO Constr. Corp.*, 207 AD2d 274; *Corto v Fujisankei Communications Intl.*, 177 AD2d 397.)

## OPINION OF THE COURT

GRAFFEO, J.

In this action, a real estate company that prepared due diligence reports for a developer in connection with the potential purchase of commercial properties alleges that a rival brokerage firm was unjustly enriched when it acquired the materials from the developer and later obtained a commission on the ultimate sale of the properties. The issue before us is whether a sufficient relationship existed between the two real estate firms to provide a basis for an unjust enrichment cause of action. Based on the allegations presented in the complaint, we hold that the relationship between these two parties was too attenuated.

Plaintiff Georgia Malone & Company, Inc. (Malone) is a licensed real estate brokerage and consulting firm that provides

its clients with information regarding the purchase and sale of properties not yet on the market. Its principal officer is Georgia Malone. Defendant Rosewood Realty Group, Inc. (Rosewood) and defendant Aaron Jungreis, a broker in the firm, are also engaged in the real estate trade.

In the course of its realty business, Malone introduced defendant CenterRock Realty, LLC (CenterRock), a developer, to the sellers of residential apartment buildings in midtown Manhattan. Thereafter, Malone and CenterRock, by its managing member, defendant Ralph Rieder, entered into a contract in which Malone agreed to produce due diligence materials relating to the properties for CenterRock's review for potential acquisition. CenterRock acknowledged that it would keep the due diligence information confidential and agreed to pay Malone a commission of 1.25% of the total purchase price for its brokerage services.[1]

Malone then provided CenterRock with certain documents, including an underwriting model, purchase contract, certificates of occupancy, income summary, short aging summary, bank accounts and bank deposit reports, rent rolls, reports of environmental and engineering investigations and recommendations for the selection of consultants. In December 2007, CenterRock executed a contract of sale with the owners to purchase the properties for $70 million.

Under the terms of the purchase agreement, CenterRock had 25 days to perform due diligence investigations, during which time it could terminate the deal without a penalty. According to Malone, Rieder delayed tender of the down payment and the sellers agreed to extend the due diligence deadline an additional 21 days. During the due diligence period, Malone claims that it continued to collect, create and provide CenterRock with confidential information pertaining to the properties and that

---

**1.** Specifically, the agreement provided that CenterRock "agrees to treat all [i]nformation [furnished to it by Malone] as confidential and shall not duplicate, distribute, disclose, or disseminate such documentation or information without the prior written consent of [Malone], in each instance, which [Malone] may withhold in its sole discretion." The contract further stated that CenterRock could, on a confidential basis, "reveal the [i]nformation only to its affiliates, representatives, key employees, lenders, partners, advisors, outside counsel and accountants ('Related Parties') . . . who (x) need to know the [i]nformation for the purpose of evaluating the [p]ropert[ies], and (y) are informed by [CenterRock] of the confidential nature of the [i]nformation." CenterRock also agreed to be held liable for the breach of the confidentiality clause by any of the Related Parties.

Rieder repeatedly represented that CenterRock would be ready to close on time.

About a week before the expiration of the contract extension, Georgia Malone received an e-mail from Rieder that stated: "See what you can do about finding [another] buyer for [the properties]. If it falls flat I am prepared to do whatever you think is fair including making up your entire fee. Ideally, I would like to tack it on to our next deal." Malone attempted but failed to locate another buyer.[2] CenterRock terminated the contract on the last day of the due diligence period and refused to pay Malone's demand for its commission in the amount of $875,000 (1.25% of the contract price).

After CenterRock pulled out of the deal, Malone alleges that Elie Rieder gave the due diligence materials to a third party for the purpose of selling the documentation to Rosewood. In return, Rosewood paid the Rieders $150,000 for the materials and obtained a new buyer who eventually purchased the properties for $68.5 million. Rosewood received a commission of $500,000 from the sale.

Following that transaction, Malone commenced this action alleging a breach of contract against CenterRock and Ralph Rieder and interposing unjust enrichment claims against all defendants. Supreme Court dismissed all claims except those against CenterRock. On Malone's appeal, the Appellate Division modified, with two Justices dissenting, by reinstating the unjust enrichment claims against the Rieders and otherwise affirmed (86 AD3d 406 [2011]). The Appellate Division granted Malone's motion for leave to appeal and certified the following question: "Was the order of this Court, which modified the order of the Supreme Court, properly made?" (2011 NY Slip Op 85308[U] [2011]).

On appeal, Malone seeks reinstatement of its unjust enrichment claim against Rosewood. Malone contends that Rosewood knew that it produced the due diligence materials and that, as a consequence, Rosewood unfairly profited at Malone's expense by collecting a commission on the sale of the properties. In opposition, Rosewood argues that Malone's complaint fails to make out an unjust enrichment claim against it because there was no

---

2. While these events were transpiring, Malone alleges that Rieder and defendant Elie Rieder (Rieder's son and an officer of CenterRock) were secretly attempting to obtain equity partners in order to purchase the properties through another entity to avoid paying Malone its commission.

business relationship or connection between them. In addition, Rosewood submits that Malone's complaint is inadequate because it does not assert that Rosewood was aware that the information had been deemed confidential, nor does it allege that Rosewood knew that CenterRock had not paid Malone for production of the due diligence documents.

As we have stated on several occasions, " '[t]he theory of unjust enrichment lies as a quasi-contract claim' " and contemplates "an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties" (*IDT Corp. v Morgan Stanley Dean Witter & Co.*, 12 NY3d 132, 142 [2009], quoting *Goldman v Metropolitan Life Ins. Co.*, 5 NY3d 561, 572 [2005]). An unjust enrichment claim is rooted in "the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another" (*Miller v Schloss*, 218 NY 400, 407 [1916]). Thus, in order to adequately plead such a claim, the plaintiff must allege "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered" (*Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 182 [2011] [brackets and internal quotation marks omitted]).

In *Sperry v Crompton Corp.* (8 NY3d 204 [2007]), we held that a plaintiff cannot succeed on an unjust enrichment claim unless it has a sufficiently close relationship with the other party. In that case, the plaintiff, who claimed to have purchased overpriced tires, asserted a cause of action for unjust enrichment against the producers of the chemicals used by tire manufacturers (*id.* at 209). The plaintiff's theory was that the chemical producers overcharged the tire manufacturers, who, in turn, passed the cost to the plaintiff and others similarly situated (*id.*). Defendants moved under CPLR 3211 to dismiss the claim for failure to state a cause of action and we held that, while "a plaintiff need not be in privity with the defendant to state a claim for unjust enrichment," there must exist a relationship or connection between the parties that is not "too attenuated" (*id.* at 215-216).

More recently, we elaborated on the pleading requirements for unjust enrichment in *Mandarin*, wherein the plaintiff sought to purchase a famous painting with the intent to later auction it for a profit (16 NY3d at 177). The defendant, an alleged art expert, wrote a letter to a third party estimating the painting's value at $15 million to $17 million but the letter did not

disclose the defendant's ownership interest in the artwork (*id.*). After obtaining a copy of the letter, the plaintiff claimed to have relied on defendant's representations on valuation in ultimately purchasing the painting for $11.3 million (*id.*). Unbeknownst to the plaintiff, $8.8 million of the sale proceeds went to defendant (*id.*). When the plaintiff was unable to resell the painting for a price greater than or equal to its acquisition cost, it sued the defendant for unjust enrichment.

Upon defendant's motion to dismiss, we dismissed the unjust enrichment claim due to "the lack of allegations [in the complaint] that would indicate a relationship between the parties, or at least an awareness by [the defendant] of [the plaintiff's] existence" (*Mandarin*, 16 NY3d at 182). Reaffirming *Sperry*, we held that although the plaintiff was not required to allege privity, it had to assert a connection between the parties that was not too attenuated (*id.*). We concluded that

> "under the facts alleged, there are no indicia of an enrichment that was unjust where the pleadings failed to indicate a relationship between the parties that could have caused reliance or inducement. Without further allegations, the mere existence of a letter that happens to find a path to a prospective purchaser does not render this transaction one of equitable injustice requiring a remedy to balance a wrong. Without sufficient facts, conclusory allegations that fail to establish that a defendant was unjustly enriched at the expense of a plaintiff warrant dismissal" (*id.* at 182-183).

Seizing on *Mandarin*'s reference to "awareness," Malone argues that its unjust enrichment claim should be allowed to proceed because Rosewood was aware that Malone had created the due diligence reports and Rosewood had used the materials for its own benefit without compensating Malone. But mere knowledge that another entity created the documents is insufficient to support a claim for unjust enrichment under the facts of this case. Our mention of awareness in *Mandarin* was intended to underscore the complete lack of a relationship between the parties in that case.[3]

Similar to *Sperry* and *Mandarin*, the relationship between Malone and Rosewood is too attenuated because they simply

---

3. Contrary to the dissent's contention, the "awareness" language in *Mandarin* was dicta since the thrust of the holding pertained to the attenuation of the relationship between the parties.

had no dealings with each other. Accepting as true the facts alleged in the complaint and affording Malone the benefit of every favorable inference, as we must on a motion to dismiss (*see Roni LLC v Arfa*, 18 NY3d 846, 848 [2011]), the complaint does not contain sufficient allegations to support an unjust enrichment claim against Rosewood. In particular, the complaint does not assert that Rosewood and Malone had any contact regarding the purchase transaction.[4] And, although the complaint states that Rosewood "knew at all times" that Malone produced the due diligence reports and provided them to CenterRock with the expectation that it would be compensated in the event a purchase agreement was reached, there is no allegation that Rosewood was aware that Malone and CenterRock had agreed to the confidential nature of the due diligence information or that Rosewood knew that CenterRock had failed to pay Malone before the documents were conveyed to Rosewood. Indeed, Jungreis's e-mail communications submitted by Malone in opposition to the motions to dismiss allude to Rosewood's offer to pay the Rieders for the "due diligence costs" they "laid out," suggesting that Rosewood believed that the Rieders had compensated Malone for its services.

Contrary to Malone's contentions, there is no claim that Rosewood had anything other than arm's length business interactions with CenterRock or the Rieders. The pleadings do not implicate Rosewood in the Rieders' alleged wrongdoing. The Rieders furnished the due diligence documents and, in exchange, Rosewood paid them $150,000. Rosewood obtained a buyer and negotiated the purchase transaction with the sellers and their broker. Hence, Malone's argument that Rosewood profited without doing any work lacks merit.

The dissent cites *Simonds v Simonds* (45 NY2d 233 [1978]), a case that involved an unjust enrichment action against the second wife of the plaintiff's ex-husband. Plaintiff sought a portion of her ex-husband's life insurance proceeds obtained by the second wife. We imposed a constructive trust on the insurance proceeds held by the second wife on the basis that "[a] bona fide purchaser of property upon which a constructive trust would otherwise be imposed takes free of the constructive trust, but a gratuitous donee, however innocent, does not" (*id.* at 242). We determined that the second wife in *Simonds* was a

---

4. Malone conceded at oral argument that it had no relationship with Rosewood.

gratuitous donee. In contrast, here, Malone has alleged that Rosewood paid the Rieders for the due diligence files. Additionally, because the complaint fails to allege that Rosewood was aware of the wrongfulness of CenterRock's actions, Rosewood appears to fit the criteria of a good-faith purchaser for value which, under *Simonds*, would not support an unjust enrichment claim.

Moreover, regardless of whether Rosewood was a good-faith purchaser of the due diligence materials, the complaint fails to present a sufficient connection between Malone and Rosewood to form the basis of an unjust enrichment claim. In this respect, Malone's and the dissent's reliance on *Bradkin v Leverton* (26 NY2d 192 [1970]) is misplaced because the defendant in that case was an officer of the corporation with which the plaintiff contracted and thus his relationship with the plaintiff was much closer.

The rule urged by Malone would require parties to probe the underlying relationships between the businesses with whom they contract and other entities tangentially involved but with whom they have no direct connection. This would impose a burdensome obligation in commercial transactions. Although Malone's alleged loss of compensation for preparation of the due diligence reports certainly appears unfair, its unjust enrichment claim against Rosewood falls short of stating facts establishing a sufficient relationship to impose potential liability against that party. Such claims may be more properly pursued against CenterRock and the Rieders and, since those claims remain pending, Malone is not without recourse.

Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

Chief Judge LIPPMAN (dissenting). We have established that "[t]he essential inquiry in any action for unjust enrichment . . . is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered" (*Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 182 [2011] [internal quotation marks and citation omitted]). It is apparent that equity and good conscience do not permit Rosewood to retain the benefits of Malone's diligent work, and that plaintiff has adequately pleaded that Rosewood was unjustly enriched. Therefore, I respectfully dissent.

The allegations of this complaint are sufficient to state a cause

of action that Rosewood cannot retain the sales commission it received by using Malone's work product. According to the pleadings, Malone performed the services and due diligence necessary to equip a buyer to negotiate and to execute the purchase of the commercial properties. Rosewood then profited by using the fruits of Malone's labor and transmitting the diligence materials to a different buyer, netting Rosewood a hefty commission while Malone never received compensation for its work. Furthermore, Rosewood had an appreciation and awareness that the diligence materials were drafted by Malone, as alleged in the complaint.[1] Rosewood knew that it was receiving a benefit from Malone, its competitor in the New York real estate brokerage market, because it was evident from the materials themselves. In an affidavit in opposition to Rosewood's motion to dismiss, Georgia Malone stated, "[A]ll of the [due diligence] materials either were printed on plaintiff's letterhead or contained other information linking them to plaintiff" (emphasis omitted). Evaluating Malone's unjust enrichment claim under the "broad considerations of equity and justice" (*Paramount Film Distrib. Corp. v State of New York*, 30 NY2d 415, 421 [1972]), it is only fair to allow Malone's claim against Rosewood to proceed at this early stage in the litigation. At the motion to dismiss stage under CPLR 3211, "the pleading is to be afforded a liberal construction," and we "accord plaintiffs the benefit of every possible favorable inference" (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994]). The majority's intimation that Rosewood believed Malone had been compensated by the Rieders for its services and that Rosewood is a good-faith purchaser for value inappropriately draws inferences in favor of defendants in the context of a CPLR 3211 motion to dismiss.

In addition to requiring proof that defendant was inequitably enriched at plaintiff's expense, we held in *Sperry v Crompton Corp.* (8 NY3d 204, 215-216 [2007]) that there needs to be some nexus between the plaintiff and defendant, and the "connection" between the party conferring the benefit and the enriched party cannot be "too attenuated." Disregarding the equitable concerns at hand, the majority rules on the basis that Malone's connection to Rosewood does not satisfy the standard of *Sperry*. The majority now requires plaintiffs pleading unjust enrichment to

---

1. Paragraph 86 of the complaint states, "Rosewood and Jungreis knew at all times that Malone[ ] had performed the aforementioned work, labor and services and had supplied the aforesaid information with the expectation that Malone[ ] would be compensated therefor in the event that an agreement was reached to purchase the Property."

have a "sufficient relationship" with defendant, involving "dealings with each other" (*see* majority op at 513, 518). Requiring a relationship of mutual dealing where the plaintiff confers a benefit on the unjustly enriched party treads too close to requiring privity, which this Court expressly disclaimed in *Sperry* and *Mandarin Trading*. Our holdings in *Sperry* and *Mandarin Trading* never required that there be direct contact or a close relationship between the parties.

In *Mandarin Trading*, we indicated that "an awareness" by defendant of plaintiff's existence was sufficient for an unjust enrichment claim (16 NY3d at 182). The language describing the connection between Mandarin Trading and Wildenstein as not a "relationship . . . caus[ing] reliance or inducement" was merely for illustrative purposes and was dicta alluding back to how Mandarin also failed to meet the standard for negligent misrepresentation (*id.*). It was not a statement of the standard for unjust enrichment actions,[2] and the majority here likewise correctly refrains from applying the heightened reliance/inducement standard. Rather, our holding in *Mandarin Trading* was that the connection between the defendant, who was not aware of plaintiff's existence, was "too attenuated" under *Sperry*. In *Mandarin Trading*, the appraisal letter drafted by Wildenstein was not addressed to Mandarin Trading, and there was no information about how the letter reached plaintiff's hands. Also the plaintiff did not plead that Wildenstein was aware that Mandarin existed. The connection between the parties here by contrast was made out because Rosewood was aware that it was profiting from its competitor's work. Williston on Contracts § 68:5 is instructive here, stating that an unjustly

---

2. Only plaintiffs pleading a quantum meruit theory of unjust enrichment are required to show that they performed services for the defendants or at the defendant's behest (*see Monex Fin. Servs., Ltd. v Dynamic Currency Conversion, Inc.*, 62 AD3d 675, 676 [2d Dept 2009]). A claim of quantum meruit requires the plaintiff to allege that services were performed for defendant in good faith, that defendant accepted the services, an expectation of compensation arose, and the reasonable value of the services rendered (*AHA Sales, Inc. v Creative Bath Prods., Inc.*, 58 AD3d 6, 19 [2d Dept 2008]). The rule espoused in *Kagan v K-Tel Entertainment* (172 AD2d 375, 376 [1st Dept 1991]), which required that services resulting in unjust enrichment be performed at the "behest" of defendant, is not the correct standard for unjust enrichment. *Kagan* cited an action for quantum meruit in support of its "behest" requirement (*Kagan*, 172 AD2d at 376), and as noted by the dissent below, "limiting unjust enrichment claims to those where the benefit was conferred at the behest of the defendant . . . virtually collapses the distinction between claims for quantum meruit and those for unjust enrichment" (86 AD3d 406, 416 n 5 [1st Dept 2011]).

enriched party must have "an appreciation or knowledge . . . of the benefit" and have accepted or retained the benefit inequitably without payment for its value (26 Lord, Williston on Contracts § 68:5 [4th ed]). The Court here is dealing with an equitable concept and should not propagate a standard that gives an impregnable defense to a party allegedly dealing in misappropriated property.[3]

This Court's precedent on unjust enrichment has never required that there be a close relationship or dealings between the parties. We stated in *Simonds v Simonds* (45 NY2d 233, 242 [1978], quoting *Miller v Schloss*, 218 NY 400, 407 [1916]) that "[u]njust enrichment, however, does not require the performance of any wrongful act by the one enriched . . . . Innocent parties may frequently be unjustly enriched. What is required, generally, is that a party hold property 'under such circumstances that in equity and good conscience he ought not to retain it.' " In *Simonds*, plaintiff prevailed in an action against her ex-husband's second wife and daughter for a portion of her ex-husband's life insurance proceeds. We determined that though defendants had not acted wrongly and had no dealings with the plaintiff, they were still unjustly enriched as beneficiaries of the insurance policies (*Simonds*, 45 NY2d at 242-243). Nowhere in *Simonds* did we require defendant to have procured the unjust benefit or that there be contact between plaintiff and defendant. The majority attempts to distinguish *Simonds* on the basis that the defendant in *Simonds* did not pay for the insurance proceeds it received whereas Rosewood "appear[ed]" to be a good-faith purchaser for value of the diligence materials (majority op at 519). Drawing every inference in favor of plaintiff, Rosewood could not have been a good-faith purchaser because it had notice from Malone's letterhead that the diligence materials did not belong to CenterRock and the Rieders. The requirement that defendant not be a gratuitous donee is only applicable in the context of constructive trusts, and more importantly, it is not relevant to the connection between the plaintiff and defendant. The fact that the defendant in *Simonds* did not pay for life insurance does not change the fact that she had no relationship with plaintiff. As we stated in *Simonds*, "to evolve formalisms narrowing the broad scope of equity is to defeat its essential purpose" (45 NY2d at 239).

---

**3.** The majority acknowledges that "Malone's alleged loss of compensation for preparation of the due diligence reports certainly appears unfair" (*see* majority op at 519).

In *Bradkin v Leverton* (26 NY2d 192 [1970]), we found a viable unjust enrichment claim where there were no direct dealings between plaintiff and defendant. "[T]he defendant received a benefit from the plaintiff's services under circumstances which, in justice, preclude him from denying an obligation to pay for them" (*id.* at 197). The defendant in *Bradkin* knowingly used plaintiff's contacts without paying for them, similar to Rosewood's alleged use of Malone's due diligence materials.

The majority's policy concerns are unfounded. A ruling that Rosewood was unjustly enriched here would not impede commercial transactions or create an excessive burden on contracting parties. If a business partner conveys information whose source is clearly the company's direct competitor, the company can inquire about the circumstances of the transmission of the information. Since Malone's name was allegedly printed on the due diligence materials themselves and Malone obviously had an interest in obtaining the sales commission, Rosewood should have known that the materials were suspect. The majority ruling would appear to simply condone willful ignorance.

For these reasons, I would modify the Appellate Division order to reinstate the unjust enrichment claims against Rosewood and Jungreis.

Judges CIPARICK, READ, SMITH and JONES concur with Judge GRAFFEO; Chief Judge LIPPMAN dissents in a separate opinion in which Judge PIGOTT concurs.

Order affirmed, etc.