# United States Court of Appeals
# for the Federal Circuit

---

**ROGER J. HALL,**
*Plaintiff-Appellant,*

AND

**RJ HALL & ASSOCIATES,**
*Plaintiff,*

v.

**BED BATH & BEYOND, INC.,**
**BED BATH & BEYOND PROCUREMENT CO. INC.,**
**and FARLEY S. NACHEMIN,**
*Defendants-Appellees,*

AND

**WEST POINT HOME, INC.,**
*Defendant-Cross Appellant.*

---

2011-1165, -1235

---

Appeals from the United States District Court for the Southern District of New York in case no. 10-CV-4391, Judge Alvin K. Hellerstein.

---

Decided: January 25, 2013

---

MITCHELL C. SHELOWITZ, Shelowitz & Associates, PLLC, of New York, New York, argued for plaintiff-appellant.  With him on the brief was DARYA DOMINOVA.

LAURA A. WYTSMA, Loeb & Loeb, LLP, of Los Angeles, California, argued for defendants-appellees and defend-ant–cross appellant.  With her on the brief was JORDAN A. SIGALE, of Chicago, Illinois.

———————————

Before NEWMAN, LOURIE, AND LINN, *Circuit Judges*.

Opinion of the court filed by *Circuit Judge* NEWMAN.  Dissenting in part opinion filed by *Circuit Judge* LOURIE.

NEWMAN, *Circuit Judge*.

This case concerns a design patent for a "Tote Tow-el," as the patented design is designated by inventor Roger J. Hall.  The Tote Towel is a large towel with binding around all the edges, zippered pockets at both ends, and an angled cloth loop in the middle, pictured in U.S. Design Patent No. D596,439 S ("the '439 patent").  The patent issued on July 21, 2009, claiming the following design and similar designs:



FIG. 1

Mr. Hall filed this design patent application on November 17, 2008, and began producing the Tote Towel soon after the patent application was filed, with a label marked "patent pending." On March 20, 2009, while the '439 patent application was pending, Mr. Hall contacted Bed Bath & Beyond ("BB&B") to discuss whether BB&B would provide retail sales of the Tote Towel. At a business meeting, Mr. Hall left samples of his packaged Tote Towel with BB&B. Both the package and the towel were marked "patent pending." BB&B then, through a supplier West Point Home, Inc., had copies of the Hall towel manufactured in Pakistan, for retail sale by BB&B. The patent duly issued, and Mr. Hall sued BB&B, West Point Home, and several executives of BB&B, for patent infringement, for unfair competition under the Lanham Act, and for misappropriation under New York statutory and common law. The defendants raised various defenses and counterclaims. The district court dismissed all of the claims and counterclaims on the pleadings,[1] and all parties appeal. We conclude that the counts of patent infringement, unfair competition, and misappropriation were not subject to dismissal on the pleadings, but affirm the district court's dismissal of the counts against the BB&B executives who had been sued in their personal capacity, and affirm the dismissal of the counterclaims.

## DISCUSSION

BB&B moved to dismiss Hall's complaint for failure to state a claim on which relief can be granted, Federal Rule of Civil Procedure 12(b)(6). On a motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002). However, the

---

[1] *Hall v. Bed Bath & Beyond*, No. 10-cv-4391 (S.D.N.Y. Dec. 29, 2010), ECF No. 70 ("*Order*").

factual allegations must "raise a right to relief above the speculative level" and must cross "the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## I

## THE COMPLAINT

### A.  Design patent infringement

The district court stated that Hall's patent infringement complaint did not contain "any allegations to show what aspects of the Tote Towel merit design patent protection, or how each Defendant has infringed the protected patent claim." *Order* at 15-16. Hall states that its complaint properly pleaded the issue of design patent infringement. In *Phonometrics, Inc. v. Hospitality Franchise Systems, Inc.*, 203 F.3d 790 (Fed. Cir. 2000), this court outlined five elements of a patent infringement pleading, to (i) allege ownership of the patent, (ii) name each defendant, (iii) cite the patent that is allegedly infringed, (iv) state the means by which the defendant allegedly infringes, and (v) point to the sections of the patent law invoked. *Id.* at 794. The court stated that this is "enough detail to allow the defendants to answer" and that "Rule 12(b)(6) requires no more." *Id.* These pleading requirements have been generally followed, including in the district courts of New York, as illustrated in *Digigan, Inc. v. Ivalidate, Inc.*, No. 02 Civ. 420, 2004 WL 203010, at *4 (S.D.N.Y. Feb. 3, 2004), where the district court explained that "Plaintiff has met the standard articulated in *Phonometrics* for stating a claim under § 271." Indeed, the defendants themselves stated in their Motion to

Dismiss (on other grounds) that Hall's patent infringement claim "as set forth in the Amended Complaint is pled properly." Although the defendants now argue that the complaint is flawed because of the absence of "claim construction," the position taken by the district court, claim construction is not an essential element of a patent infringement complaint.

The district court stated that the complaint should have included answers to questions such as: "What is it about Plaintiff's towel that he claims is 'new, original and ornamental,' meriting the protection of a design patent?" *Order* at 16. The Federal Rules, and the Court in *Twombly* and *Iqbal*, do not so require. In *Twombly* the Court stated that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Here the defendants never stated that they were not apprised of Hall's infringement claim and its grounds.

In addition, the district court erred in its view of design patent law, for, as confirmed in *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) (en banc), infringement of a design patent is based on the design as a whole, not on any "points of novelty." As stated in *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1125 (Fed. Cir. 1993), "[i]n conducting [infringement] analysis the patented design is viewed in its entirety, as it is claimed." *See Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528 (1871) (infringement is determined by visual comparison of the pictured design and the accused article). The criterion is "if, in the eye of the ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is

such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Id.*

Hall's complaint identified the patent, showed the patented design, and described the accused towel as follows:

> ¶27. The Counterfeit Towel is virtually identical in design to the Tote Towel. It [has] the same shape and almost the same dimensions -- 50" x 9." The Counterfeit Towel also features the Tote Towel's unique zippered compartments and hanging loop. In fact, the inseam of the Counterfeit Towel, from one pocket to the other, is exactly the same length as that of the Tote Towel.

Paragraphs 26-40 of the complaint add specificity, and the record before the district court included pictures comparing the patented and the accused towel, such as:



*Hall v. Bed Bath & Beyond*, No. 10-cv-4391 (S.D.N.Y. June 11, 2010) (preliminary injunction hearing).

Hall presented a lengthy complaint, stating that the resemblance is such as to deceive an ordinary observer, in accordance with the *Gorham* criteria of infringement. Hall's assertion that the accused towel is "virtually identical in design" to Hall's Tote Towel, *Egyptian Goddess*, 543 F.3d at 677-78, is plausible, *see Twombly*, *supra*. The pleading requirements for design patent infringement were readily met. The district court erred in requiring that the complaint identify "new, original, and ornamental" aspects of the design, for in *Egyptian Goddess* the court negated the "point of novelty" requirement for design patents. And as stated in *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010), "[t]he ordinary observer test similarly applies in cases where the patented design incorporates numerous functional elements."

Nonetheless, the district court sua sponte dismissed the complaint. The Second Circuit in *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000), observed that a sua sponte dismissal of a complaint "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.* (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)). Such unintelligible traits are not here alleged, and cannot be discerned in the complaint. "A court's task in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Levitt v. Bear Sterns & Co.*, 340 F.3d 94, 101 (2d Cir. 2003) (internal quotations omitted).

The defendants cite this court's precedent that a "patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a rea-

sonable chance of proving infringement." *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000). That case did not relate to dismissal on the pleadings; *View Engineering* concerned a district court's discretion to sanction a patentee under Rule 11 for filing "baseless counterclaims," *id.*, counterclaims that the patentee admitted had "no factual basis." *Id.* at 984. In contrast, Hall's complaint described in detail the factual basis of Hall's infringement claim. *View Engineering* did not add a claim construction requirement to patent infringement complaints.

Here, the pleadings fully complied with Rule 8, stated the correct law, and showed plausible entitlement to relief. *Twombly*, 550 U.S. at 570. Whether the facts as plausibly pleaded can be proved is a matter for trial. The complaint meets the pleading requirements, for it has sufficient "facial plausibility" to "allow[] the court to draw the reasonable inference that the defendant is liable." *Iqbal*, 556 U.S. at 678. Hall's factual allegations in the complaint "raise a right to relief above the speculative level" and cross "the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570. The dismissal of the patent infringement count is reversed.

## B. Individual defendant Nachemin

The defendants who dealt with Hall were led by Mr. Farley S. Nachemin, Vice President of BB&B and General Merchandise Manager of "bath and seasonal." On April 20, 2009 Mr. Hall sent an email to Mr. Nachemin concerning their forthcoming meeting, and stated that "[t]he 'Tote Towel' is covered by my patent." Hall states in the complaint that during the meeting on April 22, 2009 the defendants told him that they could have similar towels produced in Pakistan at a lower cost than Hall's price. Mr. Hall states that he again informed the

defendants "that he had a patent pending on the product." Compl. ¶23. Hall charged Mr. Nachemin, personally and in his management role, with inducement to infringe and with unfair practices in his actions related to Hall's Tote Towel. Hall argues that precedent supports imposition of personal liability on such corporate officers, citing *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565 (Fed. Cir. 1986):

> [I]t is well settled that corporate officers who actively aid and abet their corporation's infringement may be personally liable for inducing infringement under § 271(b) regardless of whether the corporation is the alter ego of the corporate officer.

*Id.* at 1578-79 (citing *Power Lift, Inc. v. Lang Tools, Inc.*, 774 F.2d 478, 481 (Fed. Cir. 1985)).

The district court dismissed all counts against Mr. Nachemin, stating that "the facts alleged in the complaint make clear that any allegedly infringing activity by Nachemin occurred while the '439 Patent was pending, and did not occur after the patent had issued for the Tote Towel." The court cited *National Presto Industries, Inc. v. West Bend Co.*, 76 F.3d 1185, 1196 (Fed. Cir. 1996), for the proposition that violation of 35 U.S.C. §271(b) (inducement to infringe) "does not reach actions taken before issuance of the adverse patent." On this ground, the district court dismissed the complaint against Mr. Nachemin. The court did not discuss the applicability of *Orthokinetics*, or whether the individual defendants had aided and abetted violations of law.

Regarding the district court's reasoning based on when the '439 patent issued, we take note that the patent issued only three months after Hall's sample towel was received by BB&B. On appeal, the defendants support

the district court's action, but primarily argue that under New York law, "the party seeking to pierce a corporate veil [must] make a two-part showing: (i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997); *see also Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 138 (2d Cir. 1991) ("[T]o pierce the corporate veil, the parent corporation must at the time of the transaction complained of . . . have exercised such control that the subsidiary 'has become a mere instrumentality' of the parent, which is the real actor."). Applying the principles of New York law, we do not discern reversible error in the district court's dismissal of the action against Mr. Nachemin. That dismissal is affirmed.

   C.   The Lanham Act count for unfair competition

   Section 43(a)(1) of the Lanham Act, 15 U.S.C. §1125(a), provides:

   §43(a)(1)   Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

         (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services,

or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

The district court states that "Count 2 of the amended complaint alleges, without elaboration, that Defendants have engaged in unfair competition in violation of § 43(a)(1) of the Lanham Act" based on trademark and trade dress infringement, as well as false advertising. *Order* at 5. We do not share the district court's view that the count is "without elaboration," for the complaint describes BB&B's asserted Lanham Act acts of unfair competition as follows:

¶62. Defendants' use of [phrases including "Workout Towel," "drapes around your neck," and "convenient zipper pockets"] are likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association between the Tote Towel and the Counterfeit Towel.

¶63. The packaging of the Counterfeit Towel also states "performance that lasts the useful lifetime of the towel." . . . Defendants' use of these terms and words on its label and in commercial advertising and promotion misrepresents the nature, characteristics, and qualities of the Counterfeit

> Towel which is of extremely poor quality and falls apart only after several washes.
>
> ¶64. Defendants' attempts to claim Hall's innovations and sell inferior, cheaper products, promising lifetime use, amount to unfair competition and misappropriation under The Lanham Act, 15 U.S.C. § 1125(a), which has caused and continues to cause serious injury to Plaintiff.

The district court held that Hall's "likely to cause confusion" allegation did not state a viable cause of action because "the amended complaint does not allege the existence of a trademark." *Order* at 8. The court stated that although the BB&B packaging shows a person using the towel, in a design similar to that shown on Hall's packaging, the package is "not inherently distinctive because the image is nothing more than the product itself being used as intended." *Id.*

Hall states that the district court erred in viewing the Lanham Act count as limited to trademark or trade dress issues. Hall states that his charge of false advertising and consumer confusion arose from BB&B's advertising of the accused towel of identical appearance and similar packaging, and that consumers would readily confuse it with Hall's Tote Towel. The Second Circuit has explained that "the text of the Lanham Act makes it clear that a false advertising claim can properly be brought against a defendant who misrepresents the quality of its own goods as well." *Société Des Hotels Meridien v. LaSalle Hotel Operating P'ship, L.P.*, 380 F.3d 126, 132 (2d Cir. 2004). Lanham Act §43(a)(1) may be violated by advertising that is either "literally false," or when "the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers." *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 112 (2d Cir. 2010); *see also*

*Johnson & Johnson-Merck Consumer Pharms. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 297 (2d Cir. 1992) ("[A] plaintiff must show that either: 1) the challenged advertisement is literally false, or 2) while the advertisement is literally true it is nevertheless likely to mislead or confuse consumers.").

Hall stated that BB&B engaged in false or misleading advertising by advertising that its towel has "performance that lasts the useful lifetime of the towel." He stated that he washed one of BB&B's towels and it was damaged after a single washing, and the district court observed that "the difference between the [once] washed product and new is noticeable." However, the district court held that the "performance" advertising "is not the sort that can be described as containing a truth or falsity," and "makes no guarantees about how long the towel itself will last." *Order* at 11-12. The district court held that even if the statements of the quality of the BB&B towel are false or misleading, they are not actionable by Hall without a plausible showing of injury to Hall. Hall states that this condition is met, for the similar appearance is likely to confuse consumers, who will expect Hall's towel to be of similar poor quality.

Precedent guides that if BB&B's advertising statement is literally false, it may be actionable "without reference to the advertisement's impact on the buying public." *Tiffany*, 600 F.3d at 112 (quoting *McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544, 1549 (2d Cir. 1991)). If the statement is not literally false but is merely misleading, remedy may still be available, but the evidentiary burden is higher. In *Tiffany* the court explained that to prevail on a likelihood-of-confusion theory based on false advertising, the plaintiff must demonstrate through "extrinsic evidence" that a "statistically significant" portion of the consumer base would be confused. *Id.*

at 112-13.  A claim may be "literally false" for Lanham Act purposes if it is "false by necessary implication." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007).  Applying the "necessary implication" criterion, "[i]f the words or images, considered in context, necessarily imply a false message, the advertisement is literally false and no extrinsic evidence of consumer confusion is required."  *Id.*

We conclude that Hall has pleaded a plausible claim of falsity, whether literal or by necessary implication.  Defendants' advertising of "performance that lasts the useful lifetime of the towel" implies that the towel will not fall apart after a single wash or a few washes.  "[T]he public interest underlying the Lanham Act's prohibition of misleading advertisement is that of preventing consumer confusion or deception."  *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 193 (2d Cir. 1996).  A reasonable consumer would expect the "useful lifetime" of a towel to be more than one or a few washes.  The distortion is similar to that discussed by the Third Circuit in *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 290 F.3d 578 (3d Cir. 2002), where the product was labeled "Night Time Strength."  While "Night Time Strength" could mean whatever strength the product happened to have at night, the court held that the label was false by necessary implication because "the phrase 'nighttime strength' . . . necessarily conveys a message that the . . . product is specially made to work at night."  *Id.* at 589.  Here, "lasts the useful lifetime of the towel" literally states that the towel lasts as long as it lasts, even if it lasts for only one washing.

To meet the Lanham Act provision, Hall need not plead actual harm; the likelihood of harm is the statutory criterion.  *See* §43(a)(1) (a false advertiser "shall be liable

in a civil action by any person who believes that he or she is or is likely to be damaged by such act."). Hall's Tote Towel and BB&B's towel are competitive products, and Hall stated in his complaint that one of his resale customers mistakenly believed that BB&B was selling Hall's towel "for nearly half his price." Compl. ¶26. When the parties are competitors and the advertising tends to mislead, dismissal on the pleadings is not appropriate. For a Lanham Act §43(a) count, a "flexible approach" to injury and causation analysis is appropriate, so that "while a plaintiff must show more than a 'subjective belief' that it will be damaged, it need not demonstrate that it is in direct competition with the defendant or that it has definitely lost sales because of the defendant's advertisements." *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 694 (2d Cir. 1994); *see also Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 470 (E.D.N.Y. 2009) (at the pleading stage for §43(a), "plaintiffs need only state that there was confusion and offer facts to support that claim.").

The district court held that Hall's §43(a) claim merely "sought liability for nonactionable puffery." The Second Circuit has defined puffery as "[s]ubjective claims about products, which cannot be proven either true or false." *Time Warner*, 497 F.3d at 159 (quoting *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995)). The court in *Time Warner* further defined puffery as an "exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying," *id.* at 160, referencing the Third Circuit's description that "[p]uffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language. Such sales talk, or puffing, as it is commonly called, is considered to be offered and understood as an expression of the seller's opinion only, which is to be discounted as such by the

buyer . . . . The 'puffing' rule amounts to a seller's privilege to lie his head off, so long as he says nothing specific." *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993) (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* §109, at 756-57 (5th ed. 1984)) (internal quotation marks omitted).

The distinction between non-actionable puffing and a misleading false statement is whether a "reasonable buyer would take [the representation] at face value." *Time Warner*, 497 F.3d at 159. If no reasonable buyer would take the advertisement seriously, then "there is no danger of consumer deception and hence, no basis for a false advertising claim." *Id.* In *Lipton* the court had applied this distinction to conclude that the defendant's contention that he had conducted "thorough" research was just puffery, which was not actionable under the Lanham Act. 71 F.3d at 474.

BB&B's claim of "lasting" performance is stated as a fact; it is not "blustering" or "boasting," and does not sound like "puffery." At the pleading stage, "plaintiffs need only state that there was confusion and offer facts to support that claim." *Kuklachev*, 600 F. Supp. 2d at 470. Hall sufficiently alleged the falsity or misleading nature of the advertising, to avoid dismissal at the pleading stage. *See World Wrestling Fed'n Entm't, Inc. v. Bozell*, 142 F. Supp. 2d 514, 529 (S.D.N.Y. 2001) (declining to resolve falsity on motion to dismiss).

We conclude that dismissal of the Lanham Act §43(a) count on the pleadings was improper. Dismissal of that count is reversed.

### D. New York law

Hall included two counts under New York law, for unlawful acts under New York General Business Law

§349, and for misappropriation under New York common law. The district court dismissed both counts on the pleadings.

### a. New York General Business Law

New York GBL §349(a) states:

(a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

Hall's complaint states that the defendants violated this provision by misappropriating his towel design, and profiting therefrom:

¶69. Defendants' willful misappropriation of Plaintiff's product, ideas, and design, while earning illicit profits though unauthorized sales of the Counterfeit Towels amounts to unfair competition under the NY GBL §349(a).

New York Business Law precedent establishes that "[a] plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000). *See Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (applying the same three elements). New York law of unfair competition does not require consumer confusion, unlike the Lanham Act count for unfair competition. *See Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 198 (2d Cir. 2001) ("An unfair competition claim under New York law is not . . . dependent upon a showing of confusion or deception as to the origin of a product or service.").

Hall states that the deceptive act was the claim of the quality of the BB&B "counterfeit" towel. Hall argues that the statement is misleading, and thus a deceptive act under New York GBL §349(a). The district court held that Hall had not shown that he is injured by this statement, even if consumers are misled. The district court dismissed this count on the pleadings.

Hall's pleadings state that "the extent of the imitation of the Tote Towel by Defendants" confuses consumers into associating the Tote Towel with "the inferior Counterfeit Towels," and that this confusing similarity harms Hall's reputation. Compl. ¶45. Hall states that the defendants have sold their inferior product to Hall's military customers, where the confusingly similar appearance could adversely affect Hall's business. Hall sufficiently pleaded possible injury to his business. We conclude that the count under New York GBL §349(a) was not subject to dismissal on the pleadings.

### b. New York Common Law

The foundation of New York common law of unfair competition is "the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (2012) (quoting *Miller v. Schloss*, 218 N.Y. 400, 407 (1916)). An unfair competition claim under New York common law "must be grounded in either deception or appropriation of the exclusive property of the plaintiff." *H.L. Hayden Co. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1025 (2d Cir. 1989). New York precedent establishes that unjust enrichment includes "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Georgia Malone*, 19 N.Y.3d at 516.

This count of the complaint arises from the actions of the defendants in accepting Hall's sample towel, ostensibly for consideration of a commercial relationship, and acting in bad faith by having Hall's towels copied for commercial benefit. The common law count of unfair competition requires some element of bad faith. *See Eagles Comtronics, Inc. v. Pico Prods., Inc.*, 682 N.Y.S.2d 505, 506 (App. Div. 1998) (the gravamen of a claim of unfair competition is bad faith misappropriation). Hall's Complaint sets forth acts of bad faith:

> ¶72. Upon information and belief, Defendants have misappropriated Hall's labors, skills, efforts, invention, and good will in connection with the Tote Towel by stealing his patented design features and creating knock-off replicas of the Tote Towel.

> ¶73. Upon information and belief, by unlawfully copying Hall's designs, mass-producing the Counterfeit Towels, and selling them to consumers, Defendants have in bad faith exploited a commercial advantage which belongs exclusively to Plaintiff.

The district court observed that an action for misappropriation of an idea "requires showing '(1) a legal relationship between the parties in the form of a fiduciary relationship, an express or implied-in-fact contract, or quasi-contract, and (2) a novel and concrete idea.'" *Order* at 14 (quoting *LinkCo, Inc. v. Fujitsu Ltd.*, 230 F. Supp. 2d. 492, 501 (S.D.N.Y. 2002)). The district court found that Hall's complaint "makes clear that these parties never had any kind of contractual or quasi-contractual relationship." The court also stated that "[t]he central principle underlying a claim for unfair competition under New York law is that one may not misappropriate the

results of the labor, skill, and expenditures of another." *Order* at 13 (quoting *LinkCo*, 230 F. Supp. 2d at 500). The court held that this principle was not met. Thus the court dismissed the New York misappropriation counts on the pleadings.

Hall argues that the district court confused two lines of New York precedent, one concerned with the misappropriation of ideas and the other with the misappropriation of labor. Hall asserts that the counts of his complaint are directed not to misappropriation of his idea, but of his labor. Hall states that he spent time and money designing the towel, surveying and buying materials, assessing consumer interest, manufacturing the Tote Towel, and further efforts, including applying for the '439 Patent. The complaint alleges that those skills, investments, and efforts were misappropriated by the defendants – a misappropriation of labor, not of an idea.

BB&B states that Hall voluntarily gave BB&B a sample of his towel. BB&B does not deny that it copied Hall's towel, and states that the absence of a contractual relationship is fatal to Hall's claim under New York common law. However, New York law does not condone inappropriate actions, and provides that equitable doctrines may support a misappropriation claim. Such a claim "contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties." *Georgia Malone*, 19 N.Y.3d at 516 (internal citations omitted). New York unfair competition law is "adaptable and capacious" in its reach into the morality of commerce:

> New York courts have noted the incalculable variety of illegal practices falling within the unfair competition rubric, calling it a broad and flexible doctrine that depends more upon the facts set

forth than in most causes of action.  It has been broadly described as encompassing any form of commercial immorality, or simply as endeavoring to reap where one has not sown; it is taking the skill, expenditures and labors of a competitor, and misappropriating for the commercial advantage of one person a benefit or property right belonging to another.  The tort is adaptable and capacious.

*Roy Export Co. Establishment v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982) (internal citations, quotation marks, and alterations omitted).

The *LinkCo* court stated that "New York courts have found that persons have a protectable property interest in their 'labor, skill, expenditure, name and reputation.'"  230 F. Supp. 2d at 502 (citing *Metropolitan Opera Ass'n v. Wagner-Nichols Recorder Corp.*, 101 N.Y.S.2d 483, 492 (Sup. Ct. 1950)).  The district court erred in holding that a contractual relationship is required to support a misappropriation claim, whether the misappropriation is of a bare idea, or of labor and skill.

New York precedent recognizes that quantum meruit and unjust enrichment claims may together form a "single quasi contract claim." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005).  It was generally undisputed that Hall provided his sample towel in good faith, and that BB&B acted to Hall's detriment.  Applying the standards of equity and good conscience embodied in New York law, the count of misappropriation was not subject to dismissal on the pleadings.  Dismissal of the New York law counts is reversed.

## II

### PREEMPTION

The defendants argue that even if Hall has a New York cause of action on the premises pleaded, the action is preempted by federal patent law. BB&B states that Hall seeks "patent-like protection to intellectual creations which would otherwise remain unprotected as a matter of federal law." BB&B Brief at 30 (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 156 (1989)). Hall states that BB&B waived any preemption argument by failing to raise it in its Rule 12(b)(6) motion. The defendants state that the argument was not waived. We have considered the issue, for waiver is generally inapplicable to "significant questions of general impact or of great public concern." *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1345 (Fed. Cir. 2001).

The Court in *Bonito Boats*, 489 U.S. at 156-57, held that state law cannot protect "an unpatented utilitarian or design conception which has been freely disclosed by its author to the public at large," in that case a boat hull design in open use. However, the Court recognized that "all state regulation of potentially patentable but unpatented subject matter is not *ipso facto* pre-empted by the federal patent laws," *id.* at 154, in the complex balance between the policy of unencumbered movement of unpatented ideas, and principles of morality and fairness that are within state authority.

Hall argues that BB&B did not copy a publicly available product from the marketplace, but copied his proprietary towel that he showed to BB&B in the course of discussion of a business relationship. BB&B accepted the sample towel, and had it copied. We agree with Hall that design patent infringement is not his only possible remedy, and that principles of patent law preemption do

not override potential causes of action based on unfair commercial practices. New York misappropriation law extends to "commercial immorality, or simply as endeavoring to reap where one has not sown." *Roy Export*, 672 F.2d at 1105. We conclude that federal preemption does not apply to the circumstances set forth in the pleadings.

## III

### COUNTERCLAIMS

### A.  The Rule 11 counterclaim

West Point Home appeals from the denial of its motion for Rule 11 sanctions against Hall and his counsel, West Point Home arguing that "Hall's counsel never claimed to have engaged in the requisite pre-suit claim construction," Brief at 55, and that Hall "made no claim to have reviewed the prior art before filing suit," Brief at 56.

Rule 11 sanctions may be imposed on the filing of a complaint when "the frivolous nature of the claims-at-issue is unequivocal." *Carter v. ALK Holdings, Inc.*, 605 F.3d 1319, 1323 (Fed. Cir. 2010). The district court denied the Rule 11 motion as baseless, and we agree, for the pleadings state facts sufficient to support the counts of patent infringement and the various unfair competition claims. As we have discussed, Federal Circuit precedent, the Court's rulings in *Twombly* and *Iqbal*, and Federal Rule 8, make clear that neither claim construction nor prior art is required to be included in the pleadings. The denial of the Rule 11 motion is affirmed.

### B.  The false advertising counterclaim

The defendants presented a Lanham Act §43(a) false advertising counterclaim, on the ground that Hall's statements to them that the Tote Towel is "protected by my patent," while the patent application was still pend-

ing, was false advertising. Hall responds that his statement was not false because he had a patent application pending, that the statement was not "advertising," and that the sample towel and packaging were marked "patent pending." The district court stated that it was "apparent from the pleadings that [Hall's] representations were not made with the intent to deceive," and dismissed the counterclaim. West Point Home appeals the dismissal, stating that Lanham Act §43(a) does not require proof of deceptive intent, and that the district court acted incorrectly in dismissing this counterclaim on the pleadings, instead of preserving it for trial.

The district court correctly held that no plausible false advertising issue arose from Hall's statement that the Tote Towel was "protected by my patent" although the patent application was still pending and Hall's sample towels were marked "patent pending." *See S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001) ("In considering a false advertising claim, fundamental to any task of interpretation is the principle that text must yield to context.") (internal quotations omitted). In the circumstances, Hall's statement cannot be viewed as even plausibly misleading. The dismissal of this counterclaim is affirmed.

### C.   The false marking counterclaim

The defendants also brought a counterclaim for "false marking," because the Tote Towels apparently retained the label "patent pending" for a few months after the patent had issued. The defendants argue that falsity alone establishes liability for false marking, and that intent is not a component of a false marking claim.

A marking of "patent pending" after the patent has issued is not the falsity to which this *qui tam* statute was directed; the statute was directed at marking with an

expired or inapplicable patent. The recent America Invents Act changed the law of false marking, and the complainant must now show that it suffered a competitive injury as a result of the false marking. 35 U.S.C. §292(b). The change is retroactive in that "[t]he amendments made by this subsection . . . apply to all cases, without exception, that are pending on, or commenced on or after, the date of the enactment" in 2011. Pub. L. No. 112-29, §16(b)(4), 125 Stat. 284, 329 (2011). This enactment applies "to all pending cases, including cases pending in appellate courts." *Rogers v. Tristar Prods.*, Nos. 2011-1494, -1495, 2012 WL 1660604, at *2 (Fed. Cir. May 2, 2012).

The defendants have not pleaded any competitive injury caused by the "patent pending" label on Hall's patented Tote Towels. The district court's dismissal of this counterclaim is affirmed.

## D.  Attorney fees

The district court did not err or abuse its discretion in denying the defendants' request for attorney fees.

## SUMMARY

We reverse the dismissal of Hall's complaint counts for patent infringement, Lanham Act unfair competition, and New York unfair competition and misappropriation. The other rulings of the district court are affirmed. The case is remanded for further proceedings.

Costs to Hall.

## AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

# United States Court of Appeals
# for the Federal Circuit

_____

**ROGER J. HALL,**
*Plaintiff-Appellant,*

**AND**

**RJ HALL & ASSOCIATES,**
*Plaintiff,*

**v.**

**BED BATH & BEYOND, INC.,**
**BED BATH & BEYOND PROCUREMENT CO. INC.,**
**and FARLEY S. NACHEMIN,**
*Defendants-Appellees,*

**AND**

**WEST POINT HOME, INC.,**
*Defendant-Cross Appellant.*

_____

2011-1165, -1235

_____

Appeals from the United States District Court for the Southern District of New York in case no. 10-CV-4391, Judge Alvin K. Hellerstein.

_____

LOURIE, *Circuit Judge*, dissenting in part.

I respectfully dissent from the majority's decision to vacate and remand the district court's dismissal of both

the design patent claim and the Lanham Act § 43(a) claim in this case.

The district court dismissed the design patent count on the ground that the plaintiff's amended complaint failed to provide "any allegations to show what aspects of the Tote Towel merit design patent protection, or how each Defendant has infringed the protected patent claim." *Hall v. Bed Bath & Beyond Inc.*, No. 1:10-cv-04391-AKH, at 15–16 (S.D.N.Y. Dec. 29, 2010). The court stated, "Rather than plead in a coherent fashion, making clear how the facts support a particular theory of infringement as to a given Defendant, Plaintiff has conflated all his facts, pleading without making any distinctions of any kind. This ambiguity in pleading is unacceptable." *Id.* at 16. The court further stated:

> What is it about Plaintiff's towel that he claims is 'new, original and ornamental,' meriting the protection of a design patent? What aspects of the '439 Patent does the West Point Home Towel infringe? How does the West Point Home Towel infringe these aspects? And how have Defendants . . . infringed, contributed to infringement, or otherwise offended a provision of the patent laws? Without allegations clarifying these material propositions, the complaint is deficient under Federal Rule 8."

*Id.* at 16 (internal citations omitted). It is true that much of the above statements relate to validity rather than infringement, which is what the Amended Complaint alleged. And the court seemed to focus on particular aspects of the claimed design rather than the design as a whole, which is what our *Egyptian Goddess* decision held was the aspect of a design patent that should be the focus of an infringement inquiry. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) (en banc),

But the overall design of a design patent consists of the particular aspects of the design, and noting those aspects is not claim construction. How else does one describe a design except to note the characteristic aspects of the design? Thus, I regard the district court's analysis as not sufficiently faulty to justify vacation of its dismissal.

Moreover, and most important, the district court invited the plaintiff to replead its patent count, and the plaintiff declined to do so. Any deficiencies in the court's conception of the law of design patents and inadvertent concern with validity were precisely what the invitation to replead could have remedied. Failure to do so is tantamount to a waiver of any flaws in the court's decision. The court in effect said, "show me where I'm wrong." The plaintiff failed to take advantage of that opportunity. Under the circumstances, I see no reason to reverse the district court. The judicial system encourages correction of errors when made, and plaintiff should have paid the penalty for declining that opportunity.

In addition, I also believe that the statement appearing on the accused towel's packaging—that it has "performance that lasts the useful lifetime of the towel"—is mere puffery, a subjective claim that cannot be proven true or false and is thus not actionable under the Lanham Act. *See Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159–60 (2d Cir. 2007). Indeed, such a statement is an untestable tautology: the towel lasts as long as it lasts. Thus, I also see no reason to reverse the district court's dismissal of the Lanham Act § 43(a) claim.