■ BABY PHAT HOLDING COMPANY, LLC, Respondent, v KELL-WOOD COMPANY, Appellant. [997 NYS2d 67]—

Order, Supreme Court, New York County (Charles E. Ramos, J.), entered January 3, 2014, which, to the extent appealed from as limited by the briefs, denied defendant's motion to dismiss and to compel arbitration, unanimously modified, on the law, to dismiss the claim for negligent misrepresentation, and otherwise affirmed, without costs.

The complaint alleges that plaintiff entered into an agreement with defendant's wholly owned subsidiary, nonparty Phat Fashions, LLC (PFLLC), to purchase certain trademarks, copyrights and contractual rights. One of the key assets sold by PFLLC was a license under which a company called Intimateco paid royalties directly to defendant as compensation for its use of a PFLLC trademark. Although PFLLC is denominated as the seller under the agreement, plaintiff alleges that all of its negotiations were exclusively with defendant and it paid the $5.35 million purchase price directly to defendant. Prior to signing the agreement, defendant provided plaintiff with a royalty schedule showing that PFLLC's license with Intimateco would yield a minimum guaranteed income stream of $1.5 million over the next three years. However, plaintiff further alleges that defendant knew that the guaranteed income from the Intimateco

license was only $75,000 for that period of time. The agreement expressly requires PFLLC to cease doing business following the contract closing and provides that PFLLC shall "wind-up, liquidate, dissolve or otherwise cease its legal existence" within 30 days of the six month period following the closing.

Upon discovering the alleged misrepresentation concerning the income stream expected from Intimateco, plaintiff commenced the instant action asserting causes of action for: (1) breach of contract based upon an alter-ego theory; (2) constructive trust; (3) negligent misrepresentation; (4) restitution; and (5) abatement of the purchase price for mutual mistake. Defendant moved to dismiss the complaint for, among other things, failure to join a necessary party (PFLLC) or to stay the action and compel arbitration against nonparty PFLLC, arguing that arbitration was plaintiff's only recourse because of an arbitration provision therein requiring the arbitration of any dispute concerning the agreement.

Defendant's effort to compel plaintiff to arbitrate its contract claim against PFLLC as the basis for having this action dismissed against it was properly rejected by the motion court. The complaint only contains claims against defendant. Although plaintiff, after it commenced this action, offered to arbitrate its claims against defendant, defendant would only agree to "backstop any arbitration award against [PFLLC] consistent with the purchase agreement." It was not until oral argument of this appeal that defendant offered to arbitrate under the terms of the agreement, and then only under certain conditions which plaintiff has not accepted.

Even if defendant is correct that PFLLC, its now defunct subsidiary, stands to be inequitably affected by any judgment rendered in plaintiff's favor in this action, dismissal is not warranted (see CPLR 1001), particularly since PFLLC has been dissolved and is now judgment-proof, making any judgment or award plaintiff achieves against it a Pyrrhic victory. Were we to dismiss this action, plaintiff would be left with no other effective forum in which to proceed with its claims against defendant, given the parameters of the arbitration clause in its agreement with PFLLC and the absence of a mutual agreement to proceed with arbitration of plaintiff's claims against defendant. There is no prejudice to defendant in that it can assert all of its claims and defenses in this action. In any event, even assuming defendant is prejudiced, it could have avoided such prejudice by reaching agreement with plaintiff to participate in arbitration sooner (see CPLR 1001 [b] [3]; L-3 Communications Corp. v SafeNet, Inc., 45 AD3d 1, 13 [1st Dept 2007]).

We also reject defendant's argument that any liability alleged in the complaint predicated on an alter-ego theory must be dismissed. In order to state a claim for alter-ego liability plaintiff is generally required to allege "complete domination of the corporation [here PFLLC] in respect to the transaction attacked" and "that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury" (*Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 141 [1993]). Because a decision to pierce the corporate veil in any given instance will necessarily depend on the attendant facts and equities, there are no definitive rules governing the varying circumstances when this power may be exercised (*id.*).

If plaintiff prevails in proving that PFLLC owes it a debt (*see Matter of Morris*, 82 NY2d at 141), the further allegations in the complaint are sufficiently pleaded to support plaintiff's claim that defendant is an alter-ego of PFLLC. The complaint asserts that with respect to the transaction at issue, defendant dominated and controlled the negotiations on behalf of PFLLC and actually provided the erroneous information which persuaded plaintiff to enter into the agreement. The allegations that plaintiff paid the full purchase price directly to defendant and not PFLLC, and that before the instant transaction Intimateco directly paid defendant monies owed to PFLLC, sufficiently frame factual issues about whether defendant, as the parent company of PFLLC, commingled funds and disregarded corporate formalities (*International Credit Brokerage Co. v Agapov*, 249 AD2d 77, 78 [1st Dept 1998]).

In addition, the allegations that defendant, through its domination of PFLLC, misrepresented the value of the assets sold and then caused PFLLC to become judgment-proof, are also sufficient to support claims that defendant perpetrated a wrong or injustice against plaintiff, thus warranting intervention by a court of equity (*Tap Holdings, LLC v Orix Fin. Corp.*, 109 AD3d 167, 174 [1st Dept 2013]; *Teachers Ins. Annuity Assn. of Am. v Cohen's Fashion Opt. of 485 Lexington Ave., Inc.*, 45 AD3d 317, 318 [1st Dept 2007]). Wrongdoing in this context does not necessarily require allegations of actual fraud. While fraud certainly satisfies the wrongdoing requirement, other claims of inequity or malfeasance will also suffice (*see TNS Holdings v MKI Sec. Corp.*, 92 NY2d 335, 339 [1998]). Allegations that corporate funds were purposefully diverted to make it judgment-proof or that a corporation was dissolved without making appropriate reserves for contingent liabilities are sufficient to satisfy the pleading requirement of wrongdoing which

is necessary to pierce the corporate veil on an alter-ego theory (*Grammas v Lockwood Assoc., LLC*, 95 AD3d 1073 [2d Dept 2012]).

Defendant is correct, however, that the negligent misrepresentation claim asserted against it fails for lack of any special relationship between plaintiff and defendant (*see Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 180 [2011]). Concur—Renwick, J.P., Richter, Manzanet-Daniels, Feinman and Gische, JJ.

---

The decision and order of this Court entered herein on August 21, 2014 (120 AD3d 428 [2014]) is hereby recalled and vacated (*see* 2014 NY Slip Op 91440[U] [2014] [decided simultaneously herewith]).