Gateway Intl., 360, LLC v Richmond Capital Group, LLC (2022 NY Slip Op 00008)





Gateway Intl., 360, LLC v Richmond Capital Group, LLC


2022 NY Slip Op 00008


Decided on January 04, 2022


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 04, 2022

Before: Kapnick, J.P., Moulton, González, Rodriguez, Pitt, JJ. 


Index No. 654636/18 Appeal No. 14808 Case No. 2021-00263 

[*1]Gateway International, 360, LLC, et al., Plaintiffs-Respondents,
v
Richmond Capital Group, LLC, et al., Defendants, Jonathan Braun Also Known as Jack Snyder, Defendant-Appellant.


Law Office of Jeffrey Fleischmann PC, New York (Jeffrey Fleischmann of counsel), for appellant.
Colonna Cohen Law, PLLC, Brooklyn (Ashlee Colonna Cohen of counsel), for respondents.



Order, Supreme Court, New York County (Shawn Timothy Kelly, J.), entered on or about January 11, 2021, which, insofar appealed from as limited by the briefs, denied the motion of defendant Jonathan Braun to dismiss the claims against him pursuant to CPLR 3211(a)(7), unanimously modified, on the law, to grant the motion as to the third cause of action of the amended complaint, and otherwise affirmed, without costs.
This is an action brought by Gateway International, 360, LLC (Gateway), a Delaware LED lighting business, and its owner, Harper Franklin Zarker, Jr. for damages they sustained as the result of defendants' allegedly fraudulent financial scheme. According to the amended complaint, defendants' plan was masterminded by convicted money launderer and international drug smuggler defendant Jonathan Braun and orchestrated through a network of his companies. In order to conceal his true identity and criminal past, Braun approached plaintiffs under the alias "Jack Snyder" and offered to provide Merchant Cash Advances (MCAs) to plaintiffs through three of his companies.
According to the amended complaint, Braun had access to plaintiffs' confidential financial and personal information because plaintiff had filed an application for MCA financing with nonparty Premier Merchant Funding (PMF), and PMF had sent plaintiffs' application to MCA Subsidiary, a provider of MCA financing to small businesses. At the time, defendant Tzvi Davis a/k/a Steve Davis was the representative of MCA Subsidiary who reviewed plaintiffs' application and shared plaintiffs' confidential information with Braun. Plaintiffs allege that "Snyder" emailed them three MCA financing agreements, each containing the exact same terms, from three entities that "Snyder" owned, controlled or was otherwise associated with - defendants Richmond Capital Group, LLC (RCG), GTR Source, LLC (GTR), and Mzeed, Inc. (MZeed). In the MCA agreements, each of the three entities offered Gateway $30,000 in exchange for $44,970 worth of its future receivables. Plaintiffs signed and returned the three MCA agreements, the accompanying personal guarantees of performance, and affidavits of confession of judgment to "Snyder" via email.
According to plaintiffs, RCG, GTR, and MZeed each wired Gateway only $21,002.00 of the $30,000 promised funding amount. Only four days after the funds were delivered to Gateway, "Snyder" convinced Zarker to repay the loans immediately, in a lump sum, by falsely promising an additional loan of $725,000 from another, seemingly unrelated lender, defendant Orange Ach, LLC (Orange). "Snyder" persuaded Zarker not to repay Kash Capital, one of Gateway's creditors; he promised Zarker he would pay all of Gateway's creditors, in full, from the proceeds of the new loan and represented that Gateway would still receive over $300,000 of liquid capital to use for the business. According to the amended complaint, the company allegedly offering the new loan was owned and operated by Braun, and [*2]was part of the conspiracy.
Plaintiffs allege that Braun never intended for Gateway to receive the additional financing, but that the promise of more financing was a ruse to motivate Zarker to instantly repay the outstanding loans, plus interest, owed to Braun's companies. Gateway repaid defendants RCG, GTR, and Mzeed $63,006 in principal plus an additional $34,994 in interest within four days. Thus, defendants collected upon three loans with annual interest rates of 157% within only days of making the loans. Plaintiffs further allege that after Gateway had paid RCG, GTR, and MZeed in full, and access to Gateway's bank account had been revoked by its completion of its obligations under the MCAs, defendants RCG, GTR, and MZeed accessed Gateway's account without consent and wrongfully debited plaintiffs' business account.
Once Gateway paid the outstanding loans in full, Braun ceased all communication with Zarker and the promised $725,000 loan never materialized. Further, because Gateway's other creditors (including Kash Capital) were never paid off with the proceeds of the promised Orange MCA, plaintiffs' judgment creditors declared plaintiffs to be in breach of their contracts, filed and obtained a judgment (by way of confession) against plaintiffs, and began enforcement efforts, including sending restraints to Gateway's senior lender and seeking to levy assets of plaintiffs' accounts receivable.
Braun moved, pursuant to CPLR 3211 (a) (7), to dismiss all seven causes of action asserted against him. The motion court dismissed three of the causes of action, but sustained the second cause of action alleging Braun fraudulently induced plaintiffs to enter into contracts with RCG, GTR, and MZeed by pretending to be Snyder; the third cause of action for breach of contract against Braun as the alter ego of defendants RCG, GTR, and MZeed; the sixth cause of action for fraud against Braun in connection with the Orange MCA transaction; and the eighth cause of action for conversion.
The third cause of action for breach of contracts entered into between plaintiffs and defendants RCG, GTR and MZeed should have been dismissed because Braun is not a party to the MCA agreements and plaintiffs' conclusory alter ego allegations are insufficient to support piercing the corporate veil (see e.g. P & HR Solutions, LLC v Ram Capital Funding, LLC, 195 AD3d 473, 473-474 [1st Dept 2021]; Skanska USA Bldg. Inc. v Atlantic Yards B2 Owner, LLC, 146 AD3d 1, 12 [1st Dept 2016], affd 31 NY3d 1002 [2018]). Unlike Baby Phat Holding Co., LLC v Kellwood Co. (123 AD3d 405 [1st Dept 2014]), on which plaintiffs rely, the amended complaint does not allege that plaintiffs paid Braun (as opposed to RCG, GTR, and MZeed) or that the entities have been dissolved and are judgment-proof.
The fact that the alter ego allegations are insufficient does not mean that the causes of action for fraudulent inducement, fraud and conversion should be dismissed. "[A] corporate officer who participates [*3]in the commission of a tort may be held individually liable, regardless of whether the corporate veil is pierced" (Fletcher v Dakota, Inc., 99 AD3d 43, 49 [1st Dept 2012] [ellipsis and internal quotation marks omitted]; see also Pludeman v Northern Leasing Sys., Inc., 10 NY3d 486, 491 [2008]). Plaintiffs have alleged that Braun is individually liable because he engaged in a course of fraudulent and tortious conduct directed at Gateway and intentionally caused RCG, GTR, MZeed, and Orange to defraud and breach their contractual obligations to Gateway. Drawing all inferences in plaintiffs' favor (see generally Chanko v American Broadcasting Cos. Inc., 27 NY3d 46, 52 [2016]), plaintiffs have stated a claim for fraudulent inducement by alleging that Braun, on behalf of the defendant entities, misrepresented that he was "Jack Snyder" and not convicted felon Braun, that plaintiffs justifiably relied upon the misrepresentation to their detriment by doing business with defendants, because if plaintiffs had known Braun's true identity, they would not have borrowed money from defendants, and that plaintiffs were directly and proximately injured by this knowingly false representation (see e.g. GoSmile, Inc. v Levine, 81 AD3d 77, 81 [1st Dept 2010], lv dismissed 17 NY3d 782 [2011]; P & HR Solutions, 195 AD3d at 474).
Further, contrary to Braun's claim, the sixth cause of action, which alleges he committed fraud in connection with a promised MCA to be provided by defendant Orange if plaintiffs repaid the RCG, GTR and MZeed MCAs is not duplicative of the third cause of action, which alleges that RCG, GTR, and MZeed breached their contracts (see generally Deerfield Communications Corp. v Chesebrough-Ponds, Inc., 68 NY2d 954, 956 [1986]; First Bank of the Ams. v Motor Car Funding, 257 AD2d 287, 291-292 [1st Dept 1999]).
Finally, Braun's claim that money cannot be converted is unavailing. "The funds of a specific, named bank account are sufficiently identifiable" to be converted (Republic of Haiti v Duvalier, 211 AD2d 379, 384 [1st Dept 1995]).THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: January 4, 2022