245 E. 19 Realty LLC v 245 E. 19th St. Parking LLC (2023 NY Slip Op 50927(U))

[*1]

245 E. 19 Realty LLC v 245 E. 19th St. Parking LLC

2023 NY Slip Op 50927(U)

Decided on August 31, 2023

Supreme Court, New York County

Reed, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 31, 2023
Supreme Court, New York County

245 E. 19 Realty LLC, Plaintiff,

against
245 E. 19th Street Parking LLC, ICON PARKING HOLDINGS, LLC, HPS INVESTMENT PARTNERS, LLC, AP MEZZANINE PARTNERS II, L.P., OFFSHORE MEZZANINE PARTNERS MASTER FUND II, L.P., INSTITUTIONAL MEZZANINE PARTNERS II SUBSIDIARY, L.P., 
 JEFFREY FITTS, SCOT FRENCH, JOHN DOES 1-20, Defendants.

Index No. 651004/2022

Robert R. Reed, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 31, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51 were read on this motion to DISMISS.
The following e-filed documents, listed by NYSCEF document number (Motion 002) 27, 28, 29, 30, 32, 33, 34, 35, 36, 37, 38, 52 were read on this motion to DISMISS.
Motion sequence numbers 001 and 002 are consolidated for disposition.
This action arises out of an alleged fraudulent scheme to divert parking garage revenues as a result of the Covid-19 pandemic.
Defendants HPS Investment Partners, LLC (HPS), AP Mezzanine Partners II, L.P. (AP Mezz), Offshore Mezzanine Partners Master Fund II, L.P. (Offshore), Institutional Mezzanine Partners II Subsidiary, L.P. (Institutional), Jeffrey Fitts (Fitts), and Scot French (French) (collectively, the HPS defendants) move, pursuant to CPLR 3211 (a) (7), to dismiss the complaint for failure to state a cause of action (motion sequence number 001).
Defendants 245 E. 19th Street Parking LLC (Tenant) and Icon Parking Holdings, LLC (Icon) (together, the Icon defendants) also move, pursuant to CPLR 3211 (a) (7), to dismiss the complaint for failure to state a cause of action (motion sequence number 002).
For the reasons stated below, the HPS defendants' motion is granted, and the Icon defendants' motion is granted in part and denied in part.

 BACKGROUND
The following facts are taken from the complaint, and must be accepted as true for purposes of these motions. Landlord is the owner and landlord of the garage premises located at the building located at 245 East 19th Street in Manhattan (NY St Cts Elec Filing [NYSCEF] Doc No. 1, complaint ¶ 38). Tenant entered into a written lease agreement dated January 1, 2007 with Landlord's predecessor-in-interest for the demised space at issue (id., ¶ 41). According to Landlord, Icon is the largest operator of parking facilities in Manhattan, all garage employees wear the same Icon-branded uniform, and Icon uses similar signage at all locations (id., ¶¶ 39, 88-89). The complaint alleges that Icon and Tenant have operated an Icon-branded garage at the premises (id., ¶ 11). Tenant, Icon, HPS, and AP Mezz are organized under the laws of Delaware (id., ¶¶ 23, 24, 26, 32). 
Landlord alleges, upon information and belief, that Icon is controlled by the private equity firm HPS (id., ¶ 56). Landlord further asserts, upon information and belief, that Fitts and French are members of HPS (id., ¶ 57). In addition, AP Mezz, Offshore, and Institutional are all allegedly controlled by HPS (id., ¶ 59). 
According to Landlord, at the onset of the Covid-19 pandemic in March 2020, HPS devised a plan to help it avoid the negative implications for Icon's business and to increase profits (id., ¶ 68). Under that plan, Icon's affiliated garages would effectively stop paying rent at Icon's affiliated garages (id., ¶¶ 78-79). At the time, most garage operators expected an extreme downturn in their daily business (id., ¶ 66). 
By way of background, Landlord alleges that Icon utilizes a centralized and integrated cash management system (id., ¶ 70). Under that system, Icon sweeps funds that have been deposited into each of the affiliates' accounts into an Icon-managed account, an Icon paymaster account (id., ¶ 74). From the Icon paymaster account, Icon pays employee payrolls, general and administrative expenses, and rent (id., ¶ 75). Landlord also alleges, upon information and belief, that substantial sums that were swept into the Icon paymaster account were distributed as "administrative fees" charged by HPS (id., ¶ 76). 
Landlord further alleges, upon information and belief, that HPS, French, and Fitts directed that payment on Icon affiliates' rent obligations immediately cease (id., ¶ 79). Upon information and belief, HPS caused Icon to default on its affiliates' lease obligations on numerous affiliates' garage locations (id., ¶ 80). Landlord claims that Icon's affiliated garages funneled all or substantially all of the funds held in reserve to Icon (id., ¶ 93). The complaint also alleges that the transfers from Tenant's account left it unable to pay its rent when it became due (id., ¶ 95). Thereafter, upon information and belief, Icon subsequently transferred those funds to John Does 1-20 and HPS (id., ¶ 97). Landlord alleges that, as a result of various [*2]affiliates' defaults on their lease obligations, various landlords commenced approximately four dozen legal actions against Icon and/or its affiliates (id., ¶¶ 98-206). 
Landlord further alleges that Icon has ceased its business operations at the premises (id., ¶ 217). It claims, upon information and belief, that: (1) Icon has effectively been merged into HPS; (2) HPS directed Icon to continue its business operations at the premises under the same ownership and management; and (3) HPS either managed, oversaw or directed the operation of Icon's business at the premises (id., ¶¶ 218-220). Tenant allegedly breached the lease by failing to timely pay monthly installments of fixed rent and additional rent for a total of $844,766.45 as of February 9, 2021 (id., ¶ 222). Landlord further claims that it served Tenant with a notice of default on two occasions (id., ¶ 223). On March 15, 2021, Icon notified Landlord that it intended to surrender possession of the premises at the end of the month (id., ¶ 228). On March 30, 2021, Icon surrendered possession of the subject premises (id., ¶ 229). 
Landlord submits a declaration from John D. Smith (Smith), Icon's chief executive officer, offered in a Chapter 7 bankruptcy proceeding involving its subsidiary, Newbury Operating LLC (Newbury) (NYSCEF Doc No. 41, Smith supplemental declaration). Smith states that "[o]n a daily basis, the funds deposited into the [affiliate's] account are swept into an account maintained by Icon" (id., ¶ 5). From the paymaster account, Icon pays employee payroll, general and administrative expenses, rent, and all other operating costs (id., ¶ 6). 
Smith also submitted an affidavit in opposition to a motion seeking an order of attachment in 330 E. 39th St. LLC v Icon Parking Holdings, LLC, Sup Ct, NY County, Index No. 154558/20 (NYSCEF Doc No. 42, Smith aff). In his affidavit, Smith explained that, under Icon's cash management system, "Icon manages and facilitates all aspects of the Icon Business for . . . each garage except for the physical parking of vehicles and collection of on-site fees" (id., ¶ 12). Smith stated that Icon manages its affiliates' "scheduling and supervision of personnel . . . [and] human resource services" (id., ¶ 30). Smith also averred that "each of the [affiliates] maintain[ ] a zero-balance account (ZBA)" and that "[o]n a daily basis, the amounts accumulated in the garage-level ZBAs are swept into the Paymaster Account" (id., ¶ 29). 
The complaint asserts the following 10 causes of action: (1) declaratory judgment; (2) breach of contract against Tenant; (3) alter ego liability/piercing the corporate veil against all defendants; (4) de facto merger against all defendants; (5) tortious interference with the lease against all defendants; (6) piercing the corporate veil against HPS and/or John Does 1-20; (7) tortious interference with contract against all defendants; (8) unjust enrichment against all defendants; (9) fraudulent conveyance under Debtor and Creditor Law (DCL) § 273 against all defendants; and (10) attorney's fees under DCL § 276-a (id., ¶¶ 238-319).

 DISCUSSION
It is well settled that on a motion to dismiss, the complaint is "to be afforded a liberal construction" (Leon v Martinez, 84 NY2d 83, 87 [1994]). On a motion to dismiss pursuant to CPLR 3211 (a) (7), the court " accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory'" (Cortlandt St. Recovery Corp. v Bonderman, 31 NY3d 30, 47 [2018], quoting Leon, 84 NY2d at 87-88). However, " bare legal conclusions, as well as factual claims either inherently incredible or flatly contradicted by documentary evidence,' are not presumed to be true and accorded every favorable legal inference" (Biondi v Beekman Hill House Apt. Corp., 257 AD2d 76, 81 [1st Dept 1999], affd 94 NY2d 659 [2000] [internal quotation marks and citation omitted]). "Whether a plaintiff can ultimately establish its [*3]allegations is not part of the calculus in determining a motion to dismiss" (EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005]). 
A. Alter Ego Liability/Veil Piercing Claims (Third and Sixth Causes of Action)
The complaint asserts claims based on an alter ego and corporate veil piercing theory against all defendants (NYSCEF Doc No. 1 ¶¶ 264-272, 284-294).
"To make out a cause of action for liability on the theory of piercing the corporate veil because the corporation at issue is the defendant's alter ego, the complaining party must, above all, establish that the owners of the entity, through their domination of it, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against the party asserting the claim such that a court will intervene (see ABN AMRO Bank, N.V. v MBIA Inc., 17 NY3d 208, 229 [2011]). Piercing of the corporate veil is not a cause of action independent of that against the corporation; it is established when the facts and circumstances compel a court to impose the corporate obligation on its owners, who are otherwise shielded from liability (Matter of Morris v New York State Dept. of Taxation & Fin., 82 NY2d 135, 141 [1993])"
(Tap Holdings, LLC v Orix Fin. Corp., 109 AD3d 167, 174 [1st Dept 2013]).
" In determining the question of control, courts have considered factors such as the disregard of corporate formalities; inadequate capitalization; intermingling of funds; overlap in ownership, officers, directors and personnel; common office space or telephone numbers; the degree of discretion demonstrated by the alleged dominated corporation; whether the corporations are treated as independent profit centers; and the payment or guarantee of the corporation's debts by the dominating entity ... [n]o one factor is dispositive'"
(id., quoting TNS Holdings v MKI Sec. Corp., 243 AD2d 297, 300 [1st Dept 1997], revd on other grounds 92 NY2d 335 [1998]). 
With respect to the wrongdoing or injustice prong,
"Wrongdoing in this context does not necessarily require allegations of actual fraud. While fraud certainly satisfies the wrongdoing requirement, other claims of inequity or malfeasance will also suffice. Allegations that corporate funds were purposefully diverted to make it judgment proof or that a corporation was dissolved without making appropriate reserves for contingent liabilities are sufficient to satisfy the pleading requirement of wrongdoing which is necessary to pierce the corporate veil on an alter-ego theory"
(Baby Phat Holding Co., LLC v Kellwood Co., 123 AD3d 405, 407-408 [1st Dept 2014] [citations omitted]; see also Grammas v Lockwood Assoc., LLC, 95 AD3d 1073, 1075-1076 [2d Dept 2012]). The doctrine of piercing the corporate veil applies equally to limited liability companies (see Retropolis, Inc. v 14th St. Dev. LLC, 17 AD3d 209, 210 [1st Dept 2005]). 
Conclusory allegations of undercapitalization, intermingling of assets, and domination and control are insufficient to pierce the corporate veil (see Saivest Empreendimentos Imobiliarios E. Participacoes, Ltda v Elman Invs., Inc., 117 AD3d 447, 450 [1st Dept 2014]; accord Andejo Corp. v South St. Seaport Ltd. Partnership, 40 AD3d 407, 407 [1st Dept 2007] [a plaintiff seeking to pierce the corporate veil must "allege particularized facts to warrant piercing the corporate veil"]; Albstein v Elany Contr. Corp., 30 AD3d 210, 210 [1st Dept 2006], lv denied 7 NY3d 712 [2006] [conclusory allegations that a corporation is undercapitalized and functions as the alter ego of the owner are insufficient to pierce the corporate veil]). 
As a preliminary matter, the HPS defendants correctly assert that the third and fourth cause of action must be dismissed because "alter-ego liability is not an independent cause of action" (Ferro Fabricators, Inc. v 1807-1811 Park Ave. Dev. Corp., 127 AD3d 479, 480 [1st Dept 2015], citing Matter of Morris, 82 NY2d at 141). 
Generally, "veil-piercing claims are governed by the law of the company's state of incorporation" (Harvardsky Prumlyslovy Holding, AS. — V Likvidaci v Kozeny, 117 AD3d 77, 83 [1st Dept 2014]; see also Fletcher v Atex, Inc., 68 F3d 1451, 1456 [2d Cir 1995]).
Defendants argue that Landlord's alter ego liability and veil piercing claims are governed by Delaware law.
"[H]owever, the standard is not materially different under Delaware law, which has been interpreted as providing that no single factor could justify a decision to disregard the corporate entity, [rather,] some combination of them [i]s required, and . . . an overall element of injustice or unfairness must always be present, as well. Under Delaware law, the standard may be restated as whether [the two entities] operated as a single economic entity such that it would be inequitable for [a] court to uphold a legal distinction between them"
(Tap Holdings, LLC, 109 AD3d at 174-175 [internal quotation marks and citations omitted]).
Applying these principles, the complaint adequately alleges particularized facts to warrant piercing the corporate veil with respect to Icon (see RPH Hotels 51st St. Owner, LLC v Icon Parking Holdings, LLC, 2021 WL 4170287, *3 [Sup Ct, NY County 2021] ["(t)he allegations here, . . . suggest a scheme to abuse the corporate form" by transferring funds from tenant, leaving tenant insolvent at the end of the day]). The complaint's allegations indicate that Icon and Tenant ignored corporate formalities and operated as a single economic entity. Indeed, the complaint alleges that Icon transferred funds from Tenant's account on a daily basis, rendering Tenant insolvent at the end of the day and unable to pay rent to Landlord (NYSCEF Doc No. 1 ¶¶ 17, 19, 20; see also NYSCEF Doc No. 41, Smith declaration ¶ 5; NYSCEF Doc No. 42, Smith aff, ¶ 29). As the Court of Appeals has observed, "a fact-laden claim to pierce the corporate veil is unsuited for resolution on a pre-answer, pre-discovery motion to dismiss" (Cortlandt St. Recovery Corp., 31 NY3d at 47).
The court finds the Icon defendants' reliance on Park Armory LLC v Icon Parking Sys. LLC (203 AD3d 442 [1st Dept 2022]) to be misplaced. There, the First Department held that the plaintiff failed to allege sufficient facts to hold Icon and a related entity on an alter ego or veil piercing theory (id. at 442). The Court explained that "[t]he allegations that those defendants controlled and dominated defendant Park Armory Management LLC (PAM) for the purpose of abusing PAM's corporate form in order to divest assets from plaintiff for their benefit are conclusory," and that "[t]he allegations that the Icon defendants, as parent companies, controlled and performed PAM's executive operations, alone, are insufficient to raise an inference of abuse of the corporate form" (id.). In this case, by contrast, Landlord has sufficiently alleged that Icon controlled Tenant's operations and that Icon abused the corporate form to perpetrate a wrong or injustice against it (see RPH Hotels 51st St. Owner, LLC v Icon Parking Holdings, LLC, 2023 NY Slip Op 31370[U], **9 [Sup Ct, NY County 2023] [distinguishing Park Armory on the basis that "plaintiff alleged and proved (and Icon admitted) not only that Icon controlled and performed the garage LLC's operations, but plaintiff also established (and Icon also admitted) that Icon swept money from each garage into a bank account thereby rendering each garage as insolvent and unable to pay plaintiffs' judgments as its unpaid rent balance continued to [*4]accrue"]).[FN1]

Nevertheless, the claims against the HPS defendants based on an alter ego or veil piercing theory must be dismissed. The allegations of domination and control with respect to these defendants are conclusory and are based upon "information and belief" (see e.g. NYSCEF Doc No. 1 ¶¶ 28, 56-60).[FN2]
This is insufficient (see Park Armory LLC, 203 AD3d at 442; Cornwall Mgt. Ltd. v Kambolin, 140 AD3d 507, 507 [1st Dept 2016]; 501 Fifth Ave. Co. LLC v Alvona LLC, 110 AD3d 494, 494 [1st Dept 2010]). Although Landlord relies on allegedly fraudulent liens filed against Icon's affiliates (NYSCEF Doc No. 50 at 26), Landlord has not set forth facts showing "complete domination of the corporation . . . in respect to the transaction attacked" and "that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury" (Baby Phat Holding Co., LLC, 123 AD3d at 407 [internal quotation marks omitted and emphasis added]).
B. Fraudulent Conveyance Claims (Ninth and Tenth Causes of Action)
The ninth cause of action asserts a claim under DCL § 273, and the tenth cause of action brings a claim for attorney's fees pursuant to DCL § 276-a [FN3]
(NYSCEF Doc No. 1 ¶¶ 310-319). 
DCL § 273 (a) (2)[FN4]
provides that:
"A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
(i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
(ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due."
"[T]he voidability of these transactions is unrelated to the proof of the debtor's intent, but turns on objective facts concerning the debtor's distressed financial condition and the inadequate consideration received" (James Gadsden and Alan Kolod, Supplementary Practice [*5]Commentaries, McKinney's Debtor and Creditor Law § 273).
Contrary to the Icon defendants' contention, the complaint adequately alleges that the transfers lacked consideration sufficient to support a DCL § 273 (a) (2) claim. The complaint alleges, based on Icon's chief executive officer's affidavit, that all revenue generated by Tenant is transferred to Icon on a daily basis, leaving Tenant insolvent at the end of the day (NYSCEF Doc No. 1 ¶¶ 17, 19). According to Landlord, Icon is responsible for paying "several categories of [Tenant's] costs" (id., ¶ 75). The complaint further alleges that Icon and Tenant ceased paying rent in April 2020 (id., ¶ 255). 
A claim under DCL § 273 (a) (1) requires "actual intent to hinder, delay or defraud any creditor of the debtor" (see Wall St. Assoc. v Brodsky, 257 AD2d 526, 529 [1st Dept 1999]). Under DCL § 273 (a) (1), "[t]here is no requirement that a transaction involve common law deceit or fraudulent misrepresentation to be voidable for 'actual intent.' Actual intent to hinder or delay creditors suffices" (James Gadsden and Alan Kolod, Supplementary Practice Commentaries, McKinney's Debtor and Creditor Law § 273). "Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on 'badges of fraud' to support his case, i.e., circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent" (Wall St. Assoc., 257 AD2d at 529 [internal quotation marks and citations omitted]). 
DCL § 273 further provides:
"(b) In determining actual intent under paragraph one of subdivision (a) of this section, consideration may be given, among other factors, to whether:
(1) the transfer or obligation was to an insider;
(2) the debtor retained possession or control of the property transferred after the transfer;
(3) the transfer or obligation was disclosed or concealed;
(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(5) the transfer was of substantially all the debtor's assets;
(6) the debtor absconded;
(7) the debtor removed or concealed assets;
(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) the transfer occurred shortly before or shortly before a substantial debt was incurred;
(11) the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor"
(DCL § 273 [b]).
The Icon defendants assert that the complaint fails to allege with specificity any badges of fraud. However, the complaint alleges sufficient badges of fraud to support a DCL § 273 (a) (1) claim (see Swartz v Swartz, 145 AD3d 818, 826 [2d Dept 2016] [trial court properly held that amended complaint stated a cause of action for actual fraudulent conveyance where it alleged several "badges of fraud" giving rise to an inference of intent to hinder, delay, or defraud plaintiff]; see also Pen Pak Corp. v LaSalle Natl. Bank of Chicago, 240 AD2d 384, 386 [2d Dept 1997] [trial court did not err in denying cross motion to dismiss those causes of action predicated on actual fraud in light of badges of fraud]). More specifically, Landlord alleges that: (1) Icon is [*6]an insider of Tenant; (2) the transfers were concealed from Landlord; (3) all of Tenant's assets were swept into Icon's account on a daily basis; (4) the transfers lacked reasonably equivalent value; and (5) the transfers left Tenant insolvent on a daily basis (NYSCEF Doc No. 1 ¶¶ 20, 69, 71, 75, 96, 318). Thus, the court sustains the ninth cause of action as against the Icon defendants. 
The HPS defendants contend that the complaint fails to allege that the transfers were made to them. The DCL does not, "either explicitly or implicitly, create a creditor's remedy for money damages against parties who . . . were neither transferees of the assets nor beneficiaries of the conveyance" (Federal Deposit Ins. Corp. v Porco, 75 NY2d 840, 842 [1990]). While Landlord argues that the HPS defendants were the ultimate financial beneficiaries of the alleged wrongful scheme, the complaint only makes conclusory allegations that the HPS defendants benefitted from the alleged fraudulent transfers (see Breslin Realty Dev. Corp. v Smith & DeGroat, Inc., 175 AD3d 1234, 1235 [2d Dept 2019]). Therefore, the HPS defendants are entitled to dismissal of the ninth and tenth causes of action. 
C. De Facto Merger (Fourth Cause of Action)
The fourth cause of action asserts a cause of action for de facto merger (NYSCEF Doc No. 1, complaint ¶¶ 273-278). 
"A de facto merger occurs when a transaction, although not in form a merger, is in substance 'a consolidation or merger of seller and purchaser'" (Cargo Partner AG v Albatrans, Inc., 352 F3d 41, 45 [2d Cir 2003], quoting Schumacher v Richards Shear Co., 59 NY2d 239, 244-245 [1983]).
"The de facto merger doctrine creates an exception to the general principle that an acquiring corporation does not become responsible thereby for the [preexisting] liabilities of the acquired corporation. This doctrine is applied when the acquiring corporation has not purchased another corporation merely for the purpose of holding it as a subsidiary, but rather has effectively merged with the acquired corporation"
(Fitzgerald v Fahnestock & Co., Inc., 286 AD2d 573, 574 [1st Dept 2001]). This doctrine was developed "to protect the seller's creditors, to assess taxes, and to protect lax interest of the buyer's dissenting shareholders" (Sweatland v Park Corp., 181 AD2d 243, 246 [4th Dept 1992]).
"The hallmarks of a de facto merger include: continuity of ownership; cessation of ordinary business and dissolution of the acquired corporation as soon as possible; assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and, continuity of management, personnel, physical location, assets and general business operation"
(Highland Crusader Offshore Partners, L.P. v Targeted Delivery Tech. Holdings, Ltd., 184 AD3d 116, 126 [1st Dept 2020]; accord Menche v CDx Diagnostics, Inc., 199 AD3d 678, 679-680 [2d Dept 2021]). Courts consider "whether the acquiring corporation was seeking to obtain for itself intangible assets such as good will, trademarks, patents, customer lists and the right to use the acquired corporation's name" (Fitzgerald, 286 AD2d at 575). A de facto merger may exist, "[even] where the subsidiary is not legally dissolved. So long as the acquired corporation is shorn of its assets and has become, in essence, a shell, legal dissolution is not necessary before a finding of a de facto merger will made." The presence of each of the factors is not necessary to finding a de facto merger (Matter of New York City Asbestos Litig., 15 AD3d 254, 256 [1st Dept 2005]). 

Even giving Landlord's allegations the benefit of every favorable inference, Landlord has [*7]failed to allege sufficient facts to support a de factor merger (compare Zinbarg v Professional Bus. Coll., Inc., 179 AD3d 607, 607 [1st Dept 2020] [holding that plaintiff failed to state a cause of action against surviving corporation where "the complaint fails to allege a majority of the 'hallmarks' of a de facto merger" and "contains some allegations, upon information and belief, about shared location and personnel . . . and president's potential ownership interest in (surviving corporation)"], with Holme v Global Mins. & Metals Corp., 63 AD3d 417, 418 [1st Dept 2006] [creditor's allegations that corporation's shareholders caused corporation to cease doing business, stripped it of assets, and left it a "moribund shell" in order to avoid payment of a contractual obligation underlying judgment was sufficient to state a de facto merger theory against successor corporate entity]). Landlord does not allege a majority of the "hallmarks" of a de facto merger and merely alleges, upon information and belief, that "Icon has effectively been merged into HPS and/or John Does 1-20" (NYSCEF Doc No. 1 ¶¶ 220, 277). Landlord only alleges, upon information and belief, that "Icon has ceased its business at the subject premises," "HPS and/or John Does 1-20 either managed, oversaw, or took over the operation of Icon's business at the premises," and "HPS and/or John Does 1-20 directed Icon to continue its business operations at the premises under the same ownership and management as dictated by HPS and/or John Does 1-20" (id. ¶¶ 217-219, 274-276).[FN5]
The complaint fails to allege how or when any purported acquisition occurred. It also does not state that Icon was dissolved, that HPS assumed Icon's liabilities, that HPS and Icon combined most of their assets, or that HPS was seeking to use Icon's name.
In light of the above, the fourth cause of action is dismissed.
D. Tortious Interference With Contract (Fifth and Seventh Causes of Action)
In the fifth and seventh causes of action, Landlord asserts claims for tortious interference with contract claims against all defendants (NYSCEF Doc No. 1 ¶¶ 279-283, 295-302). 
"Tortious interference with contract requires [1] the existence of a valid contract between the plaintiff and a third party, [2] defendant's knowledge of that contract, [3] defendant's intentional procurement of the third-party's breach of the contract without justification, [4] actual breach of the contract, and [5] damages resulting therefrom" (Lama Holding Co. v Smith Barney, 88 NY2d 413, 424 [1988]). More specifically, the "plaintiff must allege that the contract would not have been breached 'but for' the defendant's conduct" (Burrowes v Combs, 25 AD3d 370, 373 [1st Dept 2006], lv denied 7 NY3d 704 [2006]).
"[E]conomic interest is a defense to an action for tortious interference with a contract unless there is a showing of malice or illegality" (Foster v Churchill, 87 NY2d 744, 750 [1996]). As correctly argued by the Icon defendants, the claims for tortious interference with contract must be dismissed against Tenant. "It is well established that only a stranger to a contract, such as a third party, can be liable for tortious interference with a contract" (Bradbury v Israel, 204 AD3d 563, 564 [1st Dept 2022] [internal quotation marks omitted]). Here, Tenant was not a stranger to its own lease (NYSCEF Doc No. 29), and thus could not have tortiously interfered [*8]with the lease.[FN6]

But, accepting the facts alleged as true, and giving Landlord the benefit of every favorable inference, the complaint adequately alleges that Icon intentionally caused Tenant to breach its lease. "[W]here there is an existing, enforceable contract and a defendant's deliberate interference results in a breach of that contract, a plaintiff may recover damages for tortious interference with contractual relations even if the defendant was engaged in lawful behavior" (NBT Bancorp v Fleet/Norstar Fin. Group, 87 NY2d 614, 621 [1996]). To be sure, the complaint alleges that Icon directed Tenant to stop paying rent, and that Icon controls Tenant's financial decisions (NYSCEF Doc No. 1 ¶¶ 69, 75, 281). Icon's chief executive officer averred in Newbury's bankruptcy proceeding that other Icon affiliates intentionally suspended rent payments to "assess[] the impact that the pandemic would have on revenue" (NYSCEF Doc No. 40, Smith declaration ¶ 7). According to Landlord, Tenant breached the lease by failing to timely pay monthly installments of fixed rent and additional rent (NYSCEF Doc No. 1 ¶ 222). In view of these allegations, Icon is not entitled to dismissal of Landlord's tortious interference with contract claims for failure to state a cause of action.
By contrast, the complaint fails to plead that the HPS defendants intentionally procured a breach of the lease without justification (see 57th St. Arts, LLC v Calvary Baptist Church, 52 AD3d 425, 426 [1st Dept 2008] ["Conclusory assertions of wrongful, intentional, malicious or improper actions, for personal profit or constituting independent torts, are inadequate to spell out a claim here for tortious interference with contract"]) or that the HPS defendants did so without economic justification (see Levine v Yokell, 258 AD2d 296, 296 [1st Dept 1999]). The relevant allegations are conclusory and are made upon "information and belief," and state that HPS has an indirect financial interest in Icon and Tenant (see e.g. NYSCEF Doc No. 1 ¶¶ 57, 59-60, 131, 281, 298).
In sum, the fifth and seventh causes of action are dismissed only as against Tenant and the HPS defendants. 
E. Unjust Enrichment (Eighth Cause of Action)
The complaint asserts a cause of action for unjust enrichment against all defendants (NYSCEF Doc No. 1 ¶¶ 303-309).
"The theory of unjust enrichment lies as a quasi-contract claim" (IDT Corp. v Morgan Stanley Dean Witter & Co., 12 NY3d 132, 142 [2009], rearg denied 12 NY3d 889 [2009]) and "contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties" (J.T. Magen & Co., Inc. v Nissan N. Am., Inc., 177 AD3d 466, 467 [1st Dept 2019] [internal quotation marks and citation omitted]). "To adequately plead [unjust enrichment], the plaintiff must allege 'that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what it is sought to be recovered'" (Georgia Malone & Co., Inc. v Rieder, 19 NY3d 511, 516 [2012], quoting Mandarin Trading Ltd. v Wildenstein, 16 NY3d 173, 182 [2011]).
The Court of Appeals has instructed that "unjust enrichment is not a catchall cause of action to be used when others fail. It is available only in unusual situations when, though the [*9]defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff" (Corsello v Verizon NY, Inc., 18 NY3d 777, 790 [2012], rearg denied 19 NY3d 937 [2012]).
Although the plaintiff need not be in privity with the defendant to state a cause of action for unjust enrichment, "there must exist a relationship or connection between the parties that is not 'too attenuated'" (Georgia Malone & Co., Inc., 19 NY3d at 516, quoting Sperry v Crompton Corp., 8 NY3d 204, 215-216 [2007]; see also Mandarin Trading Ltd., 16 NY3d at 182 [unjust enrichment claim failed given "the lack of allegations that would indicate a relationship between the parties, or at least an awareness by (defendant) of (plaintiff's) existence"]; CDR Créances S.A.S. v First Hotels & Resorts Invs., Inc., 153 AD3d 1208, 1209 [1st Dept 2017] [unjust enrichment requires a "relationship between the parties that could have caused reliance or inducement on plaintiff's" part]). A plaintiff may "satisfy this requirement by alleging that the benefit was conferred at the behest of the defendant" (Philips Intl. Invs., LLC v Pektor, 117 AD3d 1, 7 [1st Dept 2014]).
Here, as argued by the Icon defendants, Landlord's unjust enrichment claim against Tenant is duplicative of its breach of contract claim, as it covers the same subject matter as the lease (see Sebastian Holdings, Inc. v Deutsche Bank AG., 108 AD3d 433, 433 [1st Dept 2013]).[FN7]
Accordingly, the eighth cause of action is dismissed as against Tenant.
Nevertheless, the complaint adequately alleges a cause of action for unjust enrichment against Icon. Landlord alleges that Icon enriched itself at Landlord's expense by receiving income and refusing to pay rent to Landlord (NYSCEF Doc No. 1 ¶ 304). Accepting the facts alleged as true and giving them the benefit of every favorable inference, Landlord has sufficiently alleged a relationship between Landlord and Icon that it not "too attenuated" (Georgia Malone & Co., Inc., 19 NY3d at 516 [internal quotation marks and citation omitted]). Viewing the allegations in the light most favorable to Landlord, the complaint alleges at least an awareness of Landlord's existence and the debt owed to it (NYSCEF Doc No. 1 ¶¶ 41, 74-75, 88-89).
On the other hand, Landlord has failed to allege a relationship with the HPS defendants that is not "too attenuated" (Georgia Malone & Co., Inc., 19 NY3d at 516 [internal quotation marks and citation omitted]). Landlord only makes conclusory allegations, upon information and belief, that Icon transferred garage funds to HPS (NYSCEF Doc No. 1 ¶¶ 97, 189, 195, 227, 241-243). As such, the eighth cause of action is dismissed as against the HPS defendants (see Gans v Wilbee Corp., 199 AD3d 564, 566 [1st Dept 2021]). 
F. Declaratory Judgment (First Cause of Action)
The first cause of action requests declarations that Icon dominated its affiliates and that the Landlord is entitled to pierce the corporate veil and hold HPS and/or John Does 1-20 personally liable (NYSCEF Doc No. 1, wherefore clause [i]-[vii]). The HPS defendants argue that this claim should be dismissed because Landlord has asserted a breach of contract claim against Tenant, and Landlord's other claims against the HPS defendants are without any merit.
CPLR 3001 provides that "[t]he supreme court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed." It is well settled that a declaratory judgment "is usually unnecessary where a full and adequate remedy is already provided by another well-known form of action .. Where there is no necessity for resorting to the declaratory judgment it should not be employed" (Automated Ticket Sys. v Quinn, 90 AD2d 738, 739 [1st Dept 1982], affd 58 NY2d 949 [1983]). "A declaratory judgment should not be entertained where it 'parallel[s]' a breach of contract claim, and 'merely seek[s] a declaration of the same rights and obligations'" (Colfin SNP-1 Funding, LLC v Security Natl. Props. Servicing Co., LLC, 199 AD3d 406, 407 [1st Dept 2021], quoting Apple Records v Capital Records, 137 AD2d 50, 54 [1st Dept 1988]).
Here, Landlord has an adequate remedy in the form of a breach of contract claim. Therefore, it is unnecessary for the court to issue a declaratory judgment as to Landlord's entitlement to relief under an alter ego/veil piercing theory. As a result, the first cause of action is dismissed against the HPS defendants. 
G. Landlord's Request for Discovery
Landlord requests the opportunity to take discovery concerning the nature and extent of the HPS defendants' ownership and control of the Icon defendants.
CPLR 3211 (d) provides that:
"[s]hould it appear from affidavits submitted in opposition to a motion made under subdivision (a) or (b) that facts essential to justify opposition may exist but cannot then be stated, the court may deny the motion . . . or may order a continuance to permit further affidavits to be had or disclosure to be had and may make such other order as may be just."
The party seeking the benefit of subdivision (d) should specify the facts that need to be developed in discovery and explain why those facts are material to the opposition (see Warshaw Burstein Cohen Schlesinger & Kuh, LLP v Longmire, 106 AD3d 536, 537 [1st Dept 2013], lv dismissed 21 NY3d 1059 [2013], lv denied 33 NY3d 914 [2019], cert denied 140 SCt 2510 [2020]). Nevertheless, the mere hope that discovery may reveal facts essential to justify opposition "does not warrant denial of the motion" (Cracolici v Shah, 127 AD3d 413, 413 [1st Dept 2013]). 
Landlord asserts that: (1) the HPS defendants have a history of attempting to hide information concerning their investments in their portfolio companies; (2) Landlord "does not know the underlying details of the transaction" regarding the liens; and (3) "facts likely exist concerning the HPS Defendants' ownership of Icon" (NYSCEF Doc No. 50 at 28-29). However, other than speculating as to what discovery might reveal, Landlord has failed to make a sufficient showing that facts essential to its opposition could be yielded in discovery (see Cracolici, 127 AD3d at 413; see also Karpovich v City of New York, 162 AD3d 996, 998 [2d Dept 2018]). Accordingly, the court denies Landlord's request to pursue discovery pursuant to CPLR 3211 (d).
H. Landlord's Request to Replead
To the extent that Landlord requested leave to replead at oral argument (NYSCEF Doc No. 74, oral argument tr at 52:3), this request is denied. Landlord failed to "make any evidentiary showing that any of [its] proposed causes of action would have merit" (Bielsa v Gonzalez, 201 AD3d 459, 460 [1st Dept 2022], lv denied 38 NY3d 913 [2022]). 
[*10]I. Icon Defendants' Request to Strike Scandalous or Prejudicial Matter
Finally, the Icon defendants move to strike certain allegations of the complaint as scandalous and prejudicial matter. They argue that many allegations are irrelevant to the alleged breach of the lease.
CPLR 3024 (b) provides that "[a] party may move to strike any scandalous or prejudicial matter unnecessarily inserted in a pleading." CPLR 3024 (c) states that "[a] notice of motion under this rule shall be served within twenty days after service of the challenged pleading." "In reviewing a motion pursuant to CPLR 3024 (b) the inquiry is whether the purportedly scandalous or prejudicial allegations are relevant to a cause of action" (Soumayah v Minnelli, 41 AD3d 390, 392 [1st Dept 2007]; accord New York City Health & Hosps. Corp. v St. Barnabas Community Health Plan, 22 AD3d 391, 391 [1st Dept 2005]; Wegman v Dairylea Coop., 50 AD2d 108, 111 [4th Dept 1975], lv dismissed 38 NY2d 918 [1976]).
"In general, we may conclude that 'unnecessarily' means 'irrelevant.' We should test this by the rules of evidence and draw the rule accordingly. Generally speaking, if the item would be admissible at the trial under the evidentiary rules of relevancy, its inclusion in the pleading, whether or not it constitutes ideal pleading, should not ordinarily justify a motion to strike under CPLR 3024(b)"
(Patrick M. Connors, Practice Commentaries, McKinney's Cons Laws of NY, CPLR C3024:4). "Matters that are unnecessary to the viability of the cause of action and would cause undue prejudice to the defendants should be stricken from the pleading" (Irving v Four Seasons Nursing & Rehabilitation Ctr., 121 AD3d 1046, 1048 [2d Dept 2014]).
The court declines to strike the allegations challenged by the Icon defendants. Although Landlord argues that the Icon defendants' motion to strike is untimely, this requirement is not inflexible (Patrick M. Connors, Practice Commentaries, McKinney's Cons Laws of NY, CPLR C3024:5 ["If the matter in the pleading is prejudicial or scandalous and irrelevant, it is as much so later in the case as it is at the outset"]). In any event, the allegations concerning Icon's general counsel are relevant to Landlord's causes of action and the Icon defendants have not identified any prejudice. In addition, paragraphs 98 through 206 and 231 through 236 of the complaint support Landlord's allegations about the wrongful scheme to divert parking garage revenues. 

CONCLUSION
Accordingly, it is
ORDERED that the motion (sequence number 001) of defendants HPS Investment Partners, LLC, AP Mezzanine Partners II, L.P., Offshore Mezzanine Partners Master Fund II, L.P., Institutional Mezzanine Partners II Subsidiary, L.P., Jeffrey Fitts, and Scot French to dismiss is granted and the complaint is dismissed in its entirety as against said defendants, with costs and disbursements to said defendants as taxed by the Clerk of the Court, and the Clerk is directed to enter judgment accordingly in favor of said defendants; and it is further
ORDERED that the action is severed and continued against the remaining defendants; and it is further
ORDERED that the caption be amended to reflect the dismissal and that all future papers filed with the court bear the amended caption; and it is further
ORDERED that counsel for defendants HPS Investment Partners, LLC, AP Mezzanine Partners II, L.P., Offshore Mezzanine Partners Master Fund II, L.P., Institutional Mezzanine Partners II Subsidiary, L.P., Jeffrey Fitts, and Scot French shall serve a copy of this order with notice of entry upon the Clerk of the Court and the Clerk of the General Clerk's Office, who are [*11]directed to mark the court's records to reflect the change in the caption herein; and it is further
ORDERED that such service upon the Clerk of the Court and the Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in the Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases (accessible at the "E-Filing" page on the court's website); and it is further
ORDERED that the motion (sequence number 002) of defendants 245 E. 19th Street Parking LLC and Icon Parking Holdings LLC to dismiss is granted to the extent of dismissing the fourth cause of action, the fifth and seventh causes of action as against defendant 245 E. 19th Street Parking LLC, and the eighth cause of action as against defendant 245 E. 19th Street Parking LLC, and the motion is otherwise denied; and it is further
ORDERED that defendants 245 E. 19th Street Parking LLC and Icon Parking Holdings LLC are directed to serve an answer to the complaint within 20 days after service of a copy of this order with notice of entry; and it is further
ORDERED that the remaining parties are directed to appear for a virtual status conference on January 16, 2024 at 10:00 a.m.
August 31, 2023
ROBERT R. REED, J.S.C.

Footnotes

Footnote 1:The Icon defendants also rely on cases where courts dismissed alter ego/veil piercing claims based upon the existence of a cash management system (see Fletcher, 68 F3d at 1459-1460; In re Hillsborough Holdings Corp., 166 BR 461, 471 [Bankr MD Fla 1994], affd 176 BR 223 [MD Fla 1994]; Tyco Laboratories, Inc. v DASI Indus., Inc., 1993 WL 356929, *10, 1993 US Dist LEXIS 12654, *30 [ND Ill 1993]). Nevertheless, these decisions were made on a more developed record, either on summary judgment or after a bench trial.

Footnote 2:With respect to Fitts and French, Landlord alleges that these defendants are members of HPS (NYSCEF Doc No. 1 ¶ 57). However, Landlord fails to allege that Fitts and French completely dominated HPS sufficient to pierce the corporate veil to hold them liable (see Retropolis, Inc, 17 AD3d at 210).

Footnote 3:The tenth cause of action also cites DCL § 276, which provides for remedies of a creditor (NYSCEF Doc No 1 ¶ 319).

Footnote 4:Landlord asserts that the amendments to the DCL (added L 2019, c 580, eff April 4, 2020) are applicable.

Footnote 5:Landlord argues, in opposition, that the HPS defendants filed liens on 159 different Icon affiliates (see NYSCEF Doc Nos. 44, 45). Nevertheless, Landlord has not explained how the HPS defendants' filing of allegedly fraudulent liens against Icon's affiliates constitutes a de facto merger or why the allegedly fraudulent liens provide "unambiguous evidence of a coordinated takeover of the Icon Affiliates by the HPS Defendants" (NYSCEF Doc No. 50 at 19).

Footnote 6:Landlord appears to have abandoned its tortious interference claims as against Tenant. Landlord only argues, in opposition to the Icon defendants' motion, that the complaint sufficiently alleges tortious interference as against Icon (NYSCEF Doc No. 38 at 19-20).

Footnote 7:Landlord appears to have abandoned its unjust enrichment claim as against Tenant. In response to the Icon defendants' motion, Landlord only argues that the complaint adequately states a cause of action for unjust enrichment as against Icon (NYSCEF Doc No. 38 at 20-22).