Matter of Evans (2025 NY Slip Op 51125(U))

[*1]

Matter of Evans

2025 NY Slip Op 51125(U)

Decided on July 14, 2025

Surrogate's Court, Erie County

Mosey, S.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 14, 2025
Surrogate's Court, Erie County

In the Matter of the Estate of Jerry Evans, Deceased.

File No. 2022-2013/A

JOHN P. LUHR, ESQ.,
Appearing for Petitioner Jerry Evans, Jr.
ETIDO UDOUSORO, ESQ.,
Appearing for Claimants Ernest Rainey and Shirley Rainey

Acea M. Mosey, S.

Decedent died at age 56 on February 8, 2004, survived by his wife, Sylvia [FN1]
, and six [FN2]
(6) children. A petition to probate decedent's Last Will and Testament, dated October 1, 1988, was filed in this court on May 11, 2022. The Will, which is entirely handwritten, left decedent's real property located at "19 Langmeyer Street, Buffalo, NY 14215 . . . to Sylvia O'Neal." It also directed that the deed and mortgage for the property be changed to Sylvia's name "so that she can continue paying on or sell if she so desires." Sylvia was nominated as executor of decedent's estate.
Nothing had been done in this court to deal with decedent's estate until 2022 when the probate petition was filed. That petition sought Letters of Administration CTA for decedent's son, Jerry, Jr., and was consented to by Sylvia [FN3]
. The petition listed decedent's "gross testamentary estate" as consisting of $35,000 in "improved real property," with no personal property. It also listed decedent's domicile when he died in 2004 as "19 Langmeyer Street, [*2]Buffalo, New York."
Decedent's Will was admitted to probate on September 14, 2022, and Letters of Administration CTA were issued to Jerry, Jr. that same date.
On March 27, 2023, a verified claim was filed against the estate by Ernest Rainey [FN4]
and Shirley Rainey [hereafter, the Raineys or claimants] in the amount of $37,721.06. As set out in the claim, the Raineys allege that they had resided at the 19 Langmeyer property since 2019, and that they
"entered into a purchase agreement in 2019 wherein Darnell Evans agreed to sale and claimant agreed to purchase 19 Langmeyer, Buffalo, NY 14215 for $25,000.00, redeem the Estate property from In Rem Foreclosure, pay the overdue water bill $1,578.58, reinstate water service to the Estate Property and pay $2,500.00 being the cost of a surrogate court action to get Mr. Darnell Evans appointed as Fiduciary. All funds requested were paid at the office of Luis Rosado, Esq. in the presence of Roger Hicks who represented both claimants and Darnell Evans" (emphasis added).
The claim seeks either specific performance of an alleged oral purchase contract between decedent's son Darnell and the Raineys requiring conveyance of the 19 Langmeyer Street property to the Raineys, or, in the alternative, payment to the Raineys of the sum of $37,721.06, that being the amount supposedly spent by the Raineys on the property.
By petition dated July 11, 2023, Jerry, Jr. requested that the Raineys' claim be denied and dismissed in its entirety. Jurisdiction was obtained over all necessary parties, and this Court set the issues down for an evidentiary hearing. On consent of all parties, that hearing took place before a Court Attorney designated by me on a hear and report basis (SCPA 506[c]). The parties also waived the filing of a referee report, thereby permitting me to decide the issues on the hearing record and the evidence submitted at the hearing.
Following the conclusion of the hearing, the parties filed memoranda with respect to their legal positions on the issues before me. The matter has been finally submitted, and I now find and decide as follows.
(I)
At the outset, it is important to point out that, before their claim was filed in this court, the Raineys had commenced an action on December 8, 2022, in Erie County Supreme Court seeking the following relief:
"The Plaintiff herein Petition[s] the court for an order Compelling Specific Performance of the party's Oral agreement by a transfer of a duly appointed deed from Darnell Evans or, if applicable, any other appointed Fiduciary of the Estate of Jerry Evans."
By Memorandum Decision dated March 2, 2023 (attached hereto as Appendix A)[FN5]
, Supreme Court [Panepinto, J.] granted the estate fiduciary's pre-answer application to dismiss the Raineys' petition. Characterizing the matter as "a sale gone bad," Supreme Court wrote:
"This is a sale gone bad case. Plaintiffs moved by Show Cause Order for specific performance of a purported contract between the parties to sell a certain property. They also request an Order staying eviction of Plaintiffs and precluding Defendant's from selling the certain property to anyone other than Plaintiffs.

 . . .

Defendants argue for dismissal because the subject property (19 Langmeyer St., Buffalo, NY) is not owned by Darnell Evans, the individual Plaintiffs claim to have contracted with to buy 19 Langmeyer. The late Jerry Evans, Sr. owned the property and left it in his probated will to Ms. Sylvia O'Neal, the mother of the family. The Surrogate's Court has invested the Estate, with JERRY EVANS, JR. as administrator, with the authority to dispose of the property. Defendant JERRY EVANS notes that the amounts Plaintiffs claim to have paid toward purchasing the property but also notes, they have apparently lived there rent free for over three years.

 . . .

You can't sell what you don't own. Sadly, for Plaintiffs they allegedly paid approximately $38,000.00 to various people for various work related to 19 Langmeyer. It is debatable to the real owner if the work done at the property improved it or harmed it. Happily, for Plaintiffs they lived at the property for approximately $38,000.00 for over three years. Doing the math, Plaintiffs essentially paid $1,000.00 monthly in rent. And the Court notes, Plaintiff submitted proof of payment only in the amount of $6,127.35; meaning their effective rent was possibly far less than $1,000.00 monthly. Plaintiffs may have criminal and/or other complaints to bring against Defendants DARNELL EVANS and ROGER HICKS, but they do not have a valid action against JERRY EVANS, JR., as administrator of the Estate of Jerry Evans" (emphasis added).

 (II)

 (A)

In SCPA 1809 proceedings, this Court has pointed out that it "has a broad mandate in determining the validity of a claim [and resolution] 'must take into consideration all of the facts and surrounding circumstance[s], such as the relationship of the parties and the nature of the claim presented' " (Matter of DeOca, 75 Misc 3d 449, 451 [2002], quoting Matter of Truitt, 2005 NY Misc LEXIS 4818). Among other requirements, a fiduciary's petition must assert the invalidity of a claim and it must request that the claimant show cause why the claim should not [*3]be disallowed. Ultimately, the claimant has the burden of proving the claim by clear and convincing evidence (see Matter of Parisi, 2024 NYLJ LEXIS 2526, citing Matter of Fiebranz v. McMormick, 43 AD2d 794, 795 [1973], aff'd 35 NY2d 888 [1974]).
The title to real property, when specifically devised in a Will to a named individual, vests in that beneficiary at the moment of a decedent's death, subject to decedent's debts and obligations (Matter of Ballesteros, 20 AD3d 414, 415 [2005]). Here, decedent's Will — which has been admitted to probate — left his real estate to Sylvia O'Neal, and title, therefore, vested in her upon decedent's death in 2004.
With respect to the Rainey's claim, verified March 14, 2023, paragraph 7 provides as follows:
"Claimant brings this claim for specific performance by the Estate Fiduciary deeding 19 Langmeyer, Buffalo, NY 14215 to the claimant, in the alternative, pay the sum of $37,721.06 being the amount spent to date on said property."
However, at the evidentiary hearing directed by this Court, and again in their post-hearing brief, counsel for the Raineys has made clear that their specific performance claim has, in effect, been withdrawn and that the only claim actually before this Court is the one for "reimbursement":
"This hearing is a claim for payments made toward the property, which has enriched the Estate and, therefore, the claimant wants to be reimbursed" (hearing transcript of March 25, 2024, at p. 50; see also, May 29, 2024 brief for the Raineys, at pages 5-8).
Thus, I find that the claim to transfer title to 19 Langmeyer Street, Buffalo, New York has been withdrawn by the Raineys.

 (B)

Six (6) witnesses testified at the evidentiary hearing: (1) Jerry, Jr., the estate fiduciary and decedent's son; (2) Ernest Rainey [hereafter, Ernest], one of the claimants; (3) Shirley Slaughter Rainey [hereafter, Shirley], Ernest's wife and one of the claimants; (4) Brianna Waker [hereafter, Brianna], Shirley's granddaughter; (5) Tyrese Sanders [hereafter, Tyrese], claimants' grandson; and (6) Roger Hicks [hereafter, Roger], paralegal in the law office of Louis Rosado, Esq.
Counsel for Jerry, Jr. moved into evidence ten (10) exhibits, including decedent's Last Will and Testament, this Court's Decree granting probate to that Will, and the Deed to 19 Langmeyer. Counsel for the claimants moved into evidence twelve (12) exhibits, including various household bills, receipts for payments made by claimants, and the Title Search and an Invoice for 19 Langmeyer.

 (i)

The hearing revealed that decedent's son, Darnell Evans [hereafter, Darnell], purported to sell his father's 19 Langmeyer Street property to the claimants for $25,000 in May 2019. Claimants received the keys to the house from Darnell and effectively took over the property in or around June of 2019.
In addition to making payments toward the "sale price" of the property, claimants say they made several investments in the property in the amount of $10,221.06. From June 2019 to August 2020, these payments included monies to Erie County to avoid an In Rem Foreclosure, [*4]overdue water bills, unclogging of water pipes, installation of a new gas line, a new furnace, and new windows.
Claimants also say they paid Roger Hicks (through Darnell) $2,500.00 to pursue a Surrogate's Court petition for Darnell to become the fiduciary of decedent's estate. Ernest Rainey testified that he believed Roger to be an attorney:
"Q: At that time, did you know if [Roger] was an attorney or not?
A: I thought he was an attorney because that's when we went, first went to his office, he presented himself as an attorney. He did not mention that he was not an attorney or he was working for an attorney" (emphasis added).
In July, 2019, Roger obtained a title search for 19 Langmeyer on behalf of the claimants for $495.00. Roger testified as follows:
"Q: All right so, I'm showing you what has been marked as Respondent's Exhibit L, which is the Title Report we just got from you. Now, if you could please read the date of the Report.
A: July 10, 2019.
Q: So, as of at least July 10, 2019, you did get the Title Search?
A: Not necessarily. That's the date of the Title Search but, sometimes, many times, these Title Searches are prepared and not picked up for a week or two after.

 . . .

Q: So, the Petitioner's G, which is the Title Invoice shows that you made the payment on July 8th of 2019 from the money, I'm supposing from the money you got from, on June 24, 2019, and we can see that Title Search is dated July 10th, of 2019?
A: Correct.
Q: So, is it safe to say that you would have had that Title Search in hand about two weeks from that date, from the 10th or even the 8th of July?

 . . .

A: It's possible. I mean, it just depends on when somebody picked it up.
Q: Alright. But whatever the case may be, you got it a decent amount of days before the whole transaction for the Surrogate Court work. Is it safe to assume that that was why you decided to do the Surrogate Court petition, having confirmed the owner of the property?
A: Well, we knew before the Title Search came based on the conversations with Darnell and based on going on the City of Buffalo Property Website, we knew that, we knew [*5]immediately that Darnell wasn't the owner of that property and, that's the reason why we talked about the Surrogate Court with him in the first place."
Claimants continued to live at 19 Langmeyer until they were evicted in September of 2022 by Jerry, Jr., acting as Administrator CTA for this estate. Jerry, Jr. testified as follows:
"Q: And the earliest you would have had contact with Mr. and Mrs. Rainey was, was some time after [the Decree Granting Probate Administration CTA] was produced?
A: Yes, sir.
Q: And, your dealings with them were limited to discussing to meeting with them?
A: Yes, sir."
During his testimony, Jerry, Jr. explained that the reason no action had been taken to probate decedent's Will from 2004 until late 2022 was due to decedent's promise to care for his mother, Jerry, Jr.'s grandmother, who lived in one of the two units at 19 Langmeyer. During this time, Darnell occupied the other unit.
Following the death of decedent's mother in July 2017, Darnell was the only known occupant of 19 Langmeyer. Jerry, Jr. testified that Darnell "was supposed to maintain the house and all his bills."
Around 2020 during COVID, Jerry, Jr. began the probate process, which took "about two and a half years." Jerry, Jr. testified to his involvement in the estate after his appointment as fiduciary:
"Q: All right. Now, the condition of the house, okay, were you, were you in any way responsible for the condition of the house prior to that time?
A: No, sir.
Q: And but, was the house occupied —
A: Yes.
Q: . . . was there a period of time where the house was not occupied prior to that time or, do you not know?
A: I'm not sure. My grandmother went to the hospital, she started having issues and, she had fell . . . she lived several months in a nursing home . . . .
Q: . . . [Did you] as the Administrator of the Estate, ask the, Mr. and Mrs. Rainey to do any work at the property?
A: No, sir.
Q: Did you, at ever, at any point ask them to pay any bills for the property?
A: No, sir.
Q: In fact, you're, I think what you're saying is, up until the time you were appointed, you [*6]didn't actually know who they were?
A: No, sir.
Q: And, you didn't know they were living there?
A: No, sir."
Jerry, Jr. further testified about the estimated rental for a "flat in Buffalo, New York, in 2019 through 2023":
A: What was it, this was a double, so probably the first floor, it was a three bedroom, one bathroom, probably around $700, $800 —
Q: Okay.
A: — just for the downstairs.

 . . .

A: The upstairs was a two bedroom, one bathroom, probably could have got about $600 for it."
It is disputed that the Raineys occupied both the upstairs and the downstairs during the three (3) years they resided at 19 Langmeyer.

 (ii)

To recover on a cause of action for unjust enrichment a claimant must show that (1) defendant was enriched, (2) at the plaintiff's expense, and (3) equity and good conscience cannot permit defendant to retain what is sought to be recovered. (Sarker v. Das, 203 AD3d 973, 975 [2002]). Unjust enrichment " 'contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties' " (Sinis v. Allen, 2024 NY Misc. LEXIS 2951 [dec. Jan 10, 2024], quoting Georgia Malone & Co. v. Rieder, 19 NY3d 511, 516 [2012]).
It is undisputed that neither Jerry, Jr. nor any authorized representative of decedent's estate was involved in the various monetary exchanges between claimants, Darnell, and Roger. It is also undisputed that Jerry, Jr., never asked that any alleged "improvements" be made to 19 Langmeyer and he never promised or agreed to pay claimants for the alleged improvements they made.
Based on the evidence before me, decedent's estate was not "enriched". The monies paid by claimants were received outside of the estate by an individual — Darnell — who acted without any fiduciary authority. Accordingly, without the estate's knowledge, participation, or benefit, claimants' payments to Darnell and Roger are not subject to recovery from the estate either legally or equitably.
I take note that claimants occupied 19 Langmeyer for approximately three (3) years "rent free." Here, the claim for $37,721.06, less monies paid directly to Darnell and to Roger, leaves $10,221.06 allegedly spent directly on the property. However, claimants have only provided proof in the amount of $5,614.15:

$343.80

2017 Tax Record

$1291.94

Roto Rooter Bill

$1190.53

City Property Tax and Arrears

$1216.00

Window Installation

+ $1571.88 

Plumbing

$5,614.15

Total Paid

The putative rental value reflecting what the claimants should have paid to reside at 19 Langmeyer is $46,800, calculated as follows (based upon the unrebutted hearing testimony):

36 months x $ 700 estimated downstairs rent

= $ 25,200 total

+ 36 months x $ 600 estimated upstairs rent

= $21,600 total

36 months

= $46,800 total

Based on the actual proof provided, claimants paid only $155.95 per month in "rent" [$ 5,614.15 ÷ 36 months]. This is significantly less than what Jerry, Jr. opined 19 Langmeyer could have been rented for (supra). So viewed, claimants had the benefit of the bargain in terms of their payments while living for three years at 19 Langmeyer:

$46,800.00

Putative Rental Value

- $5,614.15

Claimants' Proven Payments

$41,185.85

Total "Rental Deficit"

Based on the credible proof before me, I find that claimants cannot recover any monies paid by them in connection with decedent's 19 Langmeyer property. As to monies paid directly to Darnell and to Roger, none of those payments directly (or in any other way) benefitted the property itself or decedent's estate. To the extent of any such monies, recovery by claimants is possible — if at all — only against Darnell, Roger Hicks, or the law offices of Louis Rosado, Esq. [*7]As to monies paid by claimants to arguably "benefit" the property directly, these are not recoverable because they are, at best, a small offset against rental monies owed to the estate for their use and occupancy of the property for three years.
Accordingly, the claim for payments made by the Raineys with respect to 19 Langmeyer is hereby dismissed in its entirety, without prejudice to any claim being brought hereafter by claimants in a court of competent jurisdiction against Darnell Evans, Roger Hicks, and/or the law office of Louis Rosado, Esq.
This decision shall constitute the Order and Decree of this Court, and no other or further order or decree shall be required.
DATED: July 14, 2025
BUFFALO, NEW YORK
HON. ACEA M. MOSEY
Surrogate Judge

Footnotes

Footnote 1:Decedent's death certificate, the informant on which was decedent's son, Jerry, Jr., states that decedent had never been married.

Footnote 2:While the petition lists five (5) surviving children, decedent's son, Jerry Evans, Jr. testified to decedent having six (6) surviving children. Sonia LeNeux, decedent's eldest child, was not listed.

Footnote 3:Sylvia executed her waiver and consent on September 9, 2022 as "Sylvia O'Neal," and stated her relationship to decedent as his "spouse."

Footnote 4:The Court was notified by the claimants' attorney on April 21, 2025, while decision in this matter was pending, that Mr. Rainey had died "recently."

Footnote 5:This decision was attached to the fiduciary's present SCPA 1809 petition as an exhibit.